# EXHIBIT B



The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

May 23, 2024

To Whom It May Concern:

I hereby certify that the attached Management Liability Policy, EMO-047 93 41, issued to Metropolis Condominium Association, is a true and accurate copy of the original policy issued effective March 1, 2021.

Sincerely,

Jason Couch
Vice President
Management Liability & Surety Department

JC:jc

Attachment

# e-CLAS Banner Page

## Environment: PRODUCTION

**Policy Number:** EMO 047 93 41

**Effective Date:** 03-01-2021

**Named Insured:** METROPOLIS CONDOMINIUM ASSOCIATION

12-228

BKS PARTNERS
P.O. BOX 700
DEERFIELD, IL 60015-0700

**Thank you for placing this coverage with The Cincinnati Insurance Companies!**



The Cincinnati Insurance Companies

**Management Liability**

# TOOLS TO HELP YOU MANAGE RISK

When you purchase Cincinnati's exceptional Pillar™ management liability insurance to protect your organization, you receive access to risk management tools at no additional cost to help you with the complex situations covered by your policy.

Depending on the coverage options you purchase, you may also gain access to services provided by risk management specialists who can answer questions related to managing your community association, employment practices issues, cyber liability exposures or workplace violence. Most of these services are also available at no additional cost.

☐ **Nonprofit Risk Management Portal:** Are you a nonprofit organization looking for expert risk management guidance? Cincinnati's policyholders can register with Nonprofit Risk Management Center, a leader in the risk management space, to help you identify and manage risks that threaten your missions, while empowering you to take bold, mission-advancing steps. Comprehensive risk resources provide practical knowledge on the topics that matter to you, while self assessments lead you – step by step – to building a custom risk management plan. Please visit *cinfin.com/nonprofit-risk-resources* to register for NRMC services; have your Cincinnati Insurance policy number ready.

☒ **Community Association Helpline:** As a Pillar policyholder, you can call a toll-free helpline, 844-458-9556, for assistance reducing or avoiding a potential wrongful acts loss related to managing your community association. Please have your Pillar Directors & Officers policy number ready before you call. When you place your call, leave a message including your name, complete contact information, policy number and your question or concern. A helpline lawyer will call you back, usually within one business day. Please be advised that each helpline call is limited to one hour. There is no additional charge for using this policyholder helpline.

☒ **Employment Practices Helpline:** Do you have questions about how to handle employment situations? Pillar policyholders whose coverage includes Cincinnati's employment practices liability insurance may call our toll-free Employment Connection helpline, 888-811-3427, for guidance from an attorney prior to making employment-related decisions. We offer eligible policyholders an unlimited number of calls seeking advice on employment policies and procedures.

For information, coverage availability in your state, quotes or policy service, please contact your local independent agent recommending coverage.



Page 1 of 2
Adv. 1498 (10/20)

*Everything Insurance Should Be*®

**Bates page 02**

☐ **Cyber Risk Management Portal:** Cincinnati's cyber policyholders may access eRiskHub, an online portal that provides news, information and tools to help mitigate a breach or hacking event, virus infection or other cyberattack. On eRiskHub, you will find information about privacy laws, compliance and breach response guides including compliance resources, notification letter examples, and credit bureau and government agency notifications. Other data risk management expertise may be engaged to help diagnose and repair virus infections and other common computer problems. Some services offered may extend beyond what the policy covers and include an additional charge. Please visit *https://eriskhub.com/cic* to set up an account using the access code provided with your policy or available from your agent to begin exploring this valuable resource.

☐ **Workplace Violence Hotline:** After a covered workplace violence event, Pillar policyholders who have added Cincinnati's optional workplace violence expense coverage to their EPLI policy can receive help to create a response and begin the recovery process. Simply call the toll-free, 24-hour hotline, 877-841-1082. It's monitored by Black Swan Solutions, a business unit of Empathia, Inc., which is an industry-leading crisis support organization. Coverage also reimburses recovery expenses for security, public relations, counselors and lost salaries, wages and business income. While policyholders are not obligated to use Black Swan Solutions, this resource is available if you need them.

☐ **Kidnap, Ransom and Extortion:** Success attracts respect, recognition and rewards, yet may leave you vulnerable to kidnapping and extortion attempts. This policy option pays for the vital services of Control Risks Group, a kidnap extortion and crisis management consulting firm. Experts help manage all aspects of the situation, work toward the safe return of the victim and negotiate ransom requests. They also try to identify those responsible, assess the circumstances and search for a motive.

## Selecting the right company

With Cincinnati's Pillar management liability coverage, know that you have an exceptional insurance program from a company offering:

- A management team specifically dedicated to keeping your program on the leading edge
- Superior claims service provided by Cincinnati professionals
- High financial strength rating from A.M. Best Co., reflecting our ability to pay claims and keep our promises.
- For qualifying accounts, multi-year policy terms are available in most states for many coverages, saving you the added time and expense of annual renewals

Your agent recommending Cincinnati can provide more details, answer questions and add the coverage you need.

Thank you for trusting your agent and Cincinnati to protect your business.



THE CINCINNATI INSURANCE COMPANIES

*Everything Insurance Should Be®*

Our loss control service is advisory only. We assume no responsibility for management or control of customer loss control activities or for implementation of recommended corrective measures. These materials were gathered from trade services and public information. We have not tried to identify all exposures. We do not warrant that this information is consistent with the underwriting guidelines of The Cincinnati Insurance Company and its subsidiaries or with any federal, state or local law, regulation or ordinance.

This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract. "The Cincinnati Insurance Companies", "Cincinnati Insurance" and "Cincinnati" refer to member companies of the insurer group providing property and casualty coverages through The Cincinnati Insurance Company or one of its wholly owned subsidiaries – The Cincinnati Indemnity Company or The Cincinnati Casualty Company. Each insurer has sole financial responsibility for its own products. Not all subsidiaries operate in all states. Do not reproduce or post online, in whole or in part, without written permission. Best's ratings are under continuous review and subject to change and/or affirmation. To confirm the current rating, please visit www.ambest.com. © 2020 The Cincinnati Insurance Company. 6200 S. Gilmore Road, Fairfield, OH 45014-5141.

cinfin.com

**Bates page 03**



# The Cincinnati Insurance Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# PILLAR
## COMMON POLICY DECLARATIONS

Billing Method: **AGENCY BILL**

Policy Number: **EMO 047 93 41**

Named Insured: **METROPOLIS CONDOMINIUM ASSOCIATION**

Mailing Address: **8 W MONROE ST**
**CHICAGO, IL 60603-2432**

Principal Address: **8 W MONROE ST**
**CHICAGO, IL 60603-2432**

Previous Policy Number: **EMO0479341**

Policy Period: (At 12:01 AM standard time at your principal address shown above.)

FROM: **03-01-2021**     TO: **03-01-2024**

Agency: **BKS PARTNERS 12-228**
City, State: **DEERFIELD, IL**

Shared Annual Aggregate Limit of Liability: **N/A**

Applicable to all **claims** under the following liability coverage parts:

In return for the payment of the premium and subject to all the terms and conditions of this policy, we agree with you to provide the insurance as stated in this policy.

Forms applicable to all coverage parts:

| | | |
|---|---|---|
| ML400 | 01/16 | SUMMARY OF PREMIUMS CHARGED |
| ML101 | 01/20 | GENERAL PROVISIONS |
| IA4234 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| ML458 | 01/16 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| ML487IL | 01/18 | ILLINOIS CHANGES - PILLAR POLICY PROGRAM |

ML 501 01 16
03-01-2021 09:51

Page 1 of 2
EMO 047 93 41

Bates page 04

```
ML488IL     03/16 ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL
IA4427      02/13 NOTICE OF LOSS CONTROL SERVICES
IA4433IL    03/17 IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS
IA4486      03/17 NOTICE OF LOSS CONTROL SERVICES- COMMUNITY ASSOCIATIONS
IA4521      03/20 NOTICE OF PRIVACY PRACTICES
IP409IL     01/91 IMPORTANT INFORMATION TO POLICYHOLDERS ILLINOIS
IP446       08/01 NOTICE TO POLICYHOLDERS
IA4338      05/11 SIGNATURE ENDORSEMENT
```

Coverage part declarations:

```
ML506 01/16    COMMUNITY ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE
               PART DECLARATIONS

ML512 01/16    EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS
```

**Bates page 05**

| Policy Number: | EMO 047 93 41 | Effective Date: 03-01-2021 |
|---|---|---|

# SUMMARY OF PREMIUMS CHARGED

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| COMMUNITY ASSOCIATIONS DIRECTORS & OFFICERS LIABILITY | $ 5,770 | PREPAID |
| EMPLOYMENT PRACTICES LIABILITY | $ 676 | PREPAID |
| Installment Charge | $ 0 | |
| Total | $ 6,446 | PREPAID |

| Payment Plan | First Installment | Remaining Installments |
|---|---|---|
| PREPAID | $ 6,446 | $ |

ALL OTHER TERMS AND CONDITIONS REMAINS UNCHANGED

ML 400 01 16

**Bates page 06**

# GENERAL PROVISIONS APPLICABLE TO
# ALL LIABILITY COVERAGE PARTS

These General Provisions apply only to those Coverage Parts which include a liability coverage, which shall include all Coverage Parts other than Crime Coverage. Furthermore, any reference to the "policy" in these General Provisions refers to all Coverage Parts other than Crime Coverage.

Throughout this policy, the words "we", "us" and "our" refer to the Company providing this insurance.

In consideration of the payment of the premium, in reliance on all statements in the **application** and all other information provided to us and subject to all the provisions of this policy, including the Declarations, we and the **insureds** agree as set forth below.

## SECTION I - DEFINITIONS

Where set forth in bold type in this policy, whether in singular or in plural, the following terms shall have the meanings indicated.

A. **Application** means:

1. The Application Form for this policy;

2. Any materials submitted with the Application Form which shall be maintained on file with us and shall be deemed to be attached hereto as if physically attached; and

3. Any warranty or representation provided to us within the last three years in connection with any policy of which this policy is a renewal or replacement.

B. **Claim** means:

1. With respect to the Cincinnati Data Defender™ Coverage Part, the Cincinnati Network Defender™ Coverage Part or the Cincinnati Cyber Defense™ Coverage Part, that meaning which is set forth in the applicable Coverage Part; or

2. With respect to any Coverage Part other than Cincinnati Data Defender™ Coverage Part, the Cincinnati Network Defender™ Coverage Part or the Cincinnati Cyber Defense™ Coverage Part, that meaning which is set forth in the applicable Coverage Part which shall precede the following:

   In the event that a **claim,** as defined herein, was first made during the policy period of any other policy issued by another insurer of which the applicable coverage part of this policy is a direct replacement but no **executive** was aware of such **claim** prior to the expiration of the time to give notice of such claim under such prior policy, such **claim** is deemed to be made on the first service date of **claim** upon any **insured** but only if such claim was submitted to the prior carrier and denied due solely to such **claim** not meeting the prior policy's definition of claim until after the expiration of that policy. However, if such **claim** or any **interrelated claim** was the subject of any notice under any prior policy issued by another carrier of which the applicable coverage part of this policy is a direct replacement and such **claim** was not denied by such prior insurer due to the failure to meet the prior policy's definition of claim until after the expiration of that policy, then such **claim** shall not be deemed to be first made during the **policy period**.

C. **Cyber terrorism** means the premeditated use of disruptive activities, or threat to use disruptive activities, against a computer system or network with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives. Provided, however, that such activities shall not be considered **cyber terrorism** when they are committed by or at the express direction of a government simultaneously engaged in an active conflict involving physical combat by one or more military forces of, or operating at the direction of, nation states or factions in the case of a civil war.

D. **Debtor in possession** means a "debtor in possession" as that term is defined in Title 11 of the United States Code, as amended.

E. **Defense costs** has the meaning set forth in the applicable coverage part.

ML 101 01 20            Page 1 of 10

Bates page 07

F.  **Domestic partner** means a natural person who is not otherwise an insured, in a committed relationship with an **insured person**, which is legally recognizable as a marriage, civil union or domestic partnership in the state where the **claim** is made or suit is filed and the legal existence of the relationship is verifiable by legal, government documentation existing prior to the date of the **wrongful act** complained of in the **claim**.

G.  **Executive** has the meaning set forth in the applicable coverage part.

H.  **Extended reporting period** means the periods of time described in Section **XIX** of the General Provisions.

I.  **Insured persons** has the meaning set forth in the applicable coverage part.

J.  **Insured** has the meaning set forth in the applicable coverage part.

K.  **Interrelated** means all events or incidents which have as a common nexus any:

   1.  Fact, circumstance, situation, event, transaction, or cause; or

   2.  Series of causally connected facts, circumstances, situations, events, transactions or causes.

L.  **Loss** has the meaning set forth in the applicable coverage part.

M.  **Named insured** means the entity or entities shown in the applicable Declarations as a Named Insured and any such entity in its capacity as a **debtor in possession**.

N.  **Organization** has the meaning set forth in the applicable coverage part.

O.  **Personal injury** has the meaning set forth in the applicable coverage part.

P.  **Policy period** means the period from the inception date to the expiration date as set forth in the Declarations, or to the earlier date of cancellation of the applicable Coverage Part.

Q.  **Policy year** means the period within the **policy period** from the inception date as set forth in the Declarations to the succeeding anniversary date exactly 1 year later at 12:01 AM standard time, and **policy year** means any subsequent annual period between anniversary dates at 12:01 AM standard time thereafter. In the event of a **policy period** less than 1 year, the **policy year** will be the same as the **policy period**.

   In the event of an odd term **policy period** longer than 1 year, the **policy year** is the period from the inception date to the next chronological date which precedes the expiration date by exactly 1 or more years at 12:01 AM standard time. If there are subsequent annual periods remaining in the **policy period** after that date at 12:01 AM standard time, such annual periods will each be a **policy year**.

   However, if after the issuance of this Coverage Part, any **policy year** is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding **policy year**.

R.  **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, asbestos products, petroleum products and their by-products and waste. Waste includes material to be recycled, reconditioned or reclaimed. **Pollutants** does not mean noise. **Pollutants** include but are not limited to substances that are generally recognized in industry or government to be harmful or toxic to persons, property or the environment. regardless of whether the injury or damage is caused directly or indirectly by the **pollutants** and whether:

   1.  The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

   2.  The insured uses, generates or produces the **pollutant**.

S.  **Subsidiary** means any entity in which the **named insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors, trustees, managers (if a limited liability company) or equivalent positions and any such entity in its capacity as a **debtor in possession**.

T.  **Wrongful Act** has the meaning set forth in the applicable coverage part.

---

ML 101 01 20                                                                   Page 2 of 10

**Bates page 08**

## SECTION II – EXCLUSIONS

**A.** Nuclear

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving the hazardous properties, including radioactive, toxic or explosive properties, of any nuclear material. Nuclear material means any source material, special nuclear material, or by-product materials as those terms are defined under the Atomic Energy Act of 1954 or any amendments thereto.

**B.** Pollution

We are not liable to pay, indemnify or defend any **claim** for:

1. The actual, alleged, or threatened exposure to discharge, generation, storage, transportation, dispersal, seepage, migration, emission, release, treatment, removal, disposal or escape of **pollutants**; or

2. Any request, demand, order or statutory or regulatory requirement that the **named insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

3. Any demand by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **pollutants**.

However, as it applies to any Directors and Officers Liability Coverage (including Educators Legal Liability), this exclusion shall not apply to any **claim** to which Insuring Agreement **A.** solely applies.

**C.** Prior Knowledge

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of, or in any way involving any **wrongful act** committed, attempted or allegedly committed or attempted prior to the **policy period** of the applicable Coverage Part if:

1. Prior to the earlier of the following dates:

    a. The inception of the applicable Coverage Part;

    b. The inception of the original Coverage Part of which the applicable Coverage Part is a renewal or replacement; or

    c. The Continuity Date, if any, stated in the Declarations for the applicable Coverage Part;

    any **executive** knew that such **wrongful act** is or would reasonably be regarded as the basis of a **claim**; or

2. There is a previous policy under which the **insureds** are entitled to coverage for such **claim**.

**D.** Prior Notice

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving:

1. Any **wrongful act** or any fact, circumstance or situation which has been the subject of any accepted notice given prior to the **policy period** under any policy or coverage part of which this policy is a direct or indirect renewal or replacement; or

2. Any other **wrongful act** whenever occurring, which, together with a **wrongful act** which has been the subject of such accepted notice, would constitute **interrelated wrongful acts**.

**E.** Prior or Pending Proceeding

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of, or in any way involving any prior or pending demand or civil, criminal, administrative or regulatory proceeding against any **Insured** as of the Prior or Pending Date stated in the Declarations of the applicable coverage part or any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, regardless of the legal theory asserted in such **claim**.

ML 101 01 20                                                                                      Page 3 of 10

**Bates page 09**

**F.** <u>Telephone Consumer Protection Act</u>

We are not liable to pay, indemnify or defend any **claim** for any actual or alleged violation of:

**1.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**2.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**3.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**G.** <u>War and Military Action</u>

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving:

**1.** War, including undeclared or civil war; or

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War and Military Action Exclusion supersedes Exclusion **A.** above.

With respect to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form only this exclusion will not apply to **cyber terrorism**.

## SECTION III - SEVERABILITY OF EXCLUSIONS

With respect to determining the applicability of the above Exclusions, no **wrongful act** or knowledge possessed by any one of the **insureds** shall be imputed to any other **insureds** to determine if coverage is available, unless indicated otherwise.

## SECTION IV - LIMITS OF INSURANCE, DEDUCTIBLES, MULTIPLE CLAIMS AND EXHAUSTION

**A.** If a single **claim** is covered under more than one Coverage Part, then our maximum liability for all **loss** resulting from such **claim** shall be the largest applicable Limit of Insurance available under any one of the applicable Coverage Parts.

**B.** The Deductibles for each Coverage Part apply separately to the respective Coverage Parts. If a single **claim** is covered under more than one Coverage Part, the applicable Deductibles shall be applied separately to the part of the **claim** covered by each Coverage Part but the sum of such Deductibles shall not exceed the largest applicable Deductible. The Deductibles shall be borne by the **insureds** uninsured and at their own risk.

**C.** If the aggregate Limit of Insurance for a particular Coverage Part is exhausted, then all of our obligations under that Coverage Part shall be deemed to be completely fulfilled and extinguished as of the date of such exhaustion. If the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations, is exhausted, then all of our obligations under the policy for the remainder of the annual period as described in **SECTION IV.D.** below shall be deemed to be completely fulfilled and extinguished as of the date of such exhaustion.

**D.** The Limits of Insurance of each Coverage Part and the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations, apply separately to each **policy year**. If the **policy period** of the respective Coverage Part is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period of the respective Coverage part for purposes of determining the Limits of Insurance.

ML 101 01 20

E. Regardless of the number of policies or Coverage Parts involved, all **claims** based upon or arising out of the same **wrongful act** or any **interrelated wrongful acts** shall be considered a single **claim**. Each **claim** shall be deemed to be first made at the earliest of the following times:

   1. When notice of the earliest **claim** arising out of such **wrongful act** or **interrelated wrongful acts** is received in writing by an **insured** or by us, whichever comes first; or

   2. When notice of a **wrongful act** giving rise to such **claim** is given pursuant to Section **VI** of the General Provisions.

F. In the event that more than one of the **insureds** is included in the same **claim**, the total amount of **loss** resulting from such **claim** and the Deductible shall be apportioned pro-rata among the **insureds** in proportion to their respective **loss** unless otherwise mutually agreed upon by the **insureds** and us.

## SECTION V - DUTIES OF THE INSUREDS IN THE EVENT OF A CLAIM

As conditions precedent to coverage under this policy:

A. The **insureds** shall give us written notice of any **claim** made against any of the **insureds** for a **wrongful act** as soon as practicable after any **executive** of the **named insured** has knowledge of such **claim**, and shall cooperate and provide information as we may reasonably require, including but not limited to providing a description of the **claim**, the nature of the alleged **wrongful act**, the nature of the alleged injury, the names of the claimants, and the manner in which the **insureds** first became aware of the **claim**. As soon as practicable, the **insureds** shall furnish us with copies of reports, investigations, pleadings and other papers in connection with the **claim**.

B. The **insureds** shall provide us with all information, assistance and cooperation which we reasonably request and agree that in the event of a **claim** the **insureds** will do nothing which may prejudice our position or our potential or actual rights of recovery. The failure of any **insured person** to do so shall not impair the rights of any other **insured person** under this policy.

C. The **insureds** shall not settle any **claim**, incur any **defense costs** or otherwise assume any obligation or admit any liability with respect to any **claim** without our prior written consent. We shall be entitled to full information and all particulars we may request in order to reach a decision as to such consent. We shall not be liable for any settlement, **defense costs**, assumed obligation or admission to which we have not consented.

If the **insureds** fail to provide notice of any **claim** to us as required under this Section, we shall not be entitled to deny coverage for the **claim** based solely upon late notice unless we can demonstrate that our interests were materially prejudiced by reason of such late notice.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION VI - NOTICE OF A WRONGFUL ACT

If prior to the end of the **policy period** of the applicable Coverage Part, any of the **insureds** first become aware of a specific **wrongful act** they believe is likely to give rise to a **claim**, and if any of the **insureds** give us written notice as soon as practicable, but prior to the end of the **policy period** of the applicable Coverage Part, of:

A. The specific **wrongful act**;

B. The injury or damage which has or may result therefrom; and

C. The circumstances by which the **insureds** first became aware thereof;

then any **claim** subsequently made arising out of such **wrongful act** shall be deemed to have been made when notice of the **wrongful act** was first given.

**Bates page 11**

## SECTION VII - DIRECTION OF CORRESPONDENCE TO US

All notices and other materials provided to us pursuant to the terms of this policy shall be directed to the Management Liability Claims Manager at one of the following addresses:

**A.** MgmtLiabilityClaims@cinfin.com

**B.** The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, OH 45250-5496

## SECTION VIII - APPLICATION

The **application** is the basis of this policy and is incorporated into and constitutes a part of this policy. It is agreed by the **insureds** that the statements in the **application** are their representations, that they are material and that this policy is issued in reliance upon the truth of such representations provided.

In the event that the **application** contains any misrepresentation or omission with respect to a specific **wrongful act** or the knowledge of any of the **insureds** of any matter which such **insured** has reason to believe may give rise to a future **claim** made with the intent to deceive or which materially affects the acceptability of the risk or hazard assumed by us, then no coverage shall be afforded for any **claim** based upon, arising from or in consequence of any such misrepresentation or omission. Such misrepresentation or omission shall not be imputed to any other **insureds** for purposes of determining the validity of this policy to such other **insureds** except:

**A.** Any **insured person** who knew that the statement or representation was not true as of the inception date of coverage;

**B.** The **organization** with respect to any **executive** who knew that the statement or representation was not true as of the inception date of coverage; and

**C.** The **organization** if the signer of the **application** knew that the statement or representation was untrue.

We shall not be entitled under any circumstances to void or rescind this policy with respect to any **insured**.

## SECTION IX - CHANGES IN EXPOSURE

### A. Change in Ownership of Named Insured

If during the **policy period** of the applicable Coverage Part:

1. The **named insured** consolidates with or merges into another entity such that such **named insured** is not the surviving entity;

2. Another entity or person or group of entities and/or persons acting in concert acquires more than 50% ownership of the **named insured** or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors, trustees or managers (if a limited liability company) of the **named insured**;

then, subject to all the other provisions of this policy, coverage under the applicable Coverage Part shall continue to apply to such **named insured** and its **insureds** until the end of the applicable **policy period** or any applicable **extended reporting period**, but only with respect to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to such transaction. The **named insured** shall give written notice to us as soon as practicable, but in no event later than 90 days after such transaction.

### B. Cessation of Subsidiaries

If during the **policy period** of the applicable Coverage Part any entity ceases to be a **subsidiary** as defined in the applicable Coverage Part, then, subject to all the other provisions of this policy, coverage under the applicable Coverage Part shall continue to apply to such entity and its **insureds** until the end of the applicable **policy period** or any applicable **extended reporting period**, but only with respect to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to the date such entity ceases to be a **subsidiary**. The **named insured** shall give written notice to us as soon as practicable, but in no event later than 90 days after the entity ceases to be a **subsidiary**.

ML 101 01 20                                                                 Page 6 of 10

Bates page 12

C. **Acquisition or Formation of Entity**

If during the **policy period** of the applicable Coverage Part the **named insured** newly acquires or forms another entity over which such **named insured** maintains more than 50% ownership for the purpose of coverage under the Coverage Part applicable to such **named insured**, the newly acquired or formed entity shall be deemed to be a **subsidiary**; however, coverage shall be excess of any indemnification or insurance otherwise available to such newly acquired or formed entity from any other source. Furthermore, coverage does not apply to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to the date the **named insured** acquired or formed the entity unless we agree, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for such **claims** and the **named insured** pays any additional premium we require for the endorsement.

## SECTION X - OTHER INSURANCE ISSUED BY ANOTHER INSURER

This insurance is primary except when all or any part of **loss** is also insured under any other valid and collectible prior or current policy. If any other insurance issued by another insurer (with the exception of insurance issued by us, any of our affiliated companies, or any of our predecessors or their affiliated companies) applies to any **claim**, then this insurance is excess over that other insurance, whether primary, excess, contingent or on any other basis, unless that other insurance was purchased specifically to apply excess over the limits provided in this policy. Furthermore, with respect to any coverage that may be provided for any **claim** for actual or alleged **personal injury**, such **claims** shall be specifically excess of any similar coverage provided by the **organization's** General Liability Policy.

When this policy is excess:

A. We will have no duty to defend any **claim** when any other insurer has that duty. If another insurer fails to defend and we incur costs as a result of such failure, we will be entitled to the **insureds'** rights against such other insurer; and

B. We will pay only our share of the amount of the **loss**, if any, that exceeds the sum of:

1. The total amount that all such other insurance would pay for the **loss** in the absence of this policy; and

2. The total of all deductible and self-insured amounts under all such other insurance.

## SECTION XI - SPOUSE AND LEGAL REPRESENTATIVE EXTENSION

The liability coverage parts in this policy will, subject to all other terms, conditions and exclusions of the applicable Coverage Part and the General Provisions, be extended to apply to **claims** for the **wrongful acts** of an **insured person** made against:

A. The spouse or **domestic partner** of an **insured person** but only to the extent such person is a party to any **claim** solely in such person's capacity as a spouse or **domestic partner** of an **insured person** and only if the **claim** seeks damages recoverable from marital community property jointly held by the **insured person** and the spouse or **domestic partner**, or property transferred from the **insured person** to the spouse; or

B. Their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

We have no obligation to make any payment for **loss** in connection with any **claim** against a spouse, **domestic partner**, estates, heirs, legal representatives or assigns of an **insured person** for any actual or alleged, error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted by such spouse, **domestic partner**, estates, heirs, legal representatives or assigns.

## SECTION XII - MEDIATION AND ALLOCATION

A. Any dispute including but not limited to tort claims or contract claims between an **insured** and us arising out of or relating to this policy shall be submitted to non-binding mediation prior to commencement of an action between the parties. The mediator shall be chosen by agreement. If the parties cannot agree upon a mediator, the mediator shall be chosen by the American Arbitration Association.

B. If both **loss** covered by this policy and loss not covered by this policy are incurred in a **claim** for which coverage is afforded, either because a **claim**:

ML 101 01 20                                     Page 7 of 10

**Bates page 13**

1. Against an **insured** includes both covered and uncovered matters, we will pay 100% of **defense costs** and all remaining loss will be allocated between covered **loss** and uncovered loss based upon the relative legal exposure to the parties to such matters; or

2. Is made against both an **insured** and others, we will pay **defense costs** for our **insured**, and all remaining loss will be allocated between covered **loss** and uncovered loss based upon the relative legal exposure to the parties to such matters.

C. If we and the **insureds** cannot agree as to matters in **B.** above prior to a judgment or finding in the civil or administrative proceeding dealing with **claims** against the **insureds,** the parties agree that they will, to the extent it is within their control, require that the allocation between covered **loss** and uncovered loss is made in such civil or administrative proceeding. Such efforts shall include but are not limited to the submission of special interrogatories to the finder of fact in such proceeding. Such efforts shall not require us to become a party to such civil or administrative proceeding.

D. Notwithstanding **C.** above, if we and the **insureds** cannot agree as to matters in Section **B.** above prior to a judgment or finding in any civil or administrative proceeding in which such issues are decided, we may at any time before or after mediation under **A.** above settle all **claims** against any or all **insureds.** Following such settlement, any dispute between us and the **insureds** as to the proper allocation of covered and uncovered matters under **B.** above shall be submitted to non-binding mediation prior to the commencement of an action between the parties. In any event, only one mediation as to the same issues shall be required.

## SECTION XIII - ACTION AGAINST US

A. No action shall be taken against us unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy and until the obligation of the **insureds** to pay shall have been finally determined, either by an adjudication against them or by written agreement of the **insureds,** the claimant and us. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Bankruptcy or insolvency of an **insured** or of an **insured's** estate shall not relieve us of any of our obligations hereunder.

B. No person or organization shall have any right under this policy to join us as a party to any **claim.** Neither the **insureds** nor their legal representative shall implead us in any **claim.**

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION XIV - SUBROGATION

In the event of any payment under this policy, we shall be subrogated to all of the rights to recovery of the **insureds** to the extent of such payment. The **insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as may be necessary to enable us to effectively bring suit in the name of the **insureds.**

## SECTION XV - CHANGES IN THIS POLICY

No change or modification of, or assignment of interest under this policy shall be effective except when made by us through a written endorsement to this policy.

## SECTION XVI - CONFORMITY TO STATUTE

Any terms of this policy which are in conflict with the terms of any applicable laws construing this policy are hereby amended to conform to such laws.

## SECTION XVII - ENTIRE AGREEMENT

By acceptance of this policy, we and the **insureds** agree that this policy (including the **application**) and any written endorsements attached hereto constitute the entire agreement between the parties.

ML 101 01 20                                                                                           Page 8 of 10

**Bates page 14**

## SECTION XVIII - REPRESENTATION BY NAMED INSURED

The first **named insured** shall act on behalf of all of the **insureds** in purchasing this policy and for any purposes under the policy.

## SECTION XIX - EXTENDED REPORTING PERIODS

**A.** Upon termination of any Coverage Parts for any reason, other than nonpayment of premium, the **named insured** shall be provided a 90 day Automatic Extended Reporting Period and have the option to replace the 90 day Automatic Extended Reporting Period with a 12 month Optional Extended Reporting Period. The **named insured** may also request an Optional Extended Reporting Period with a term longer than 12 months, which may be provided solely at our discretion.

   **1.** Automatic Extended Reporting Period

   A 90 day Automatic Extended Reporting Period is automatically provided without additional charge. The Automatic Extended Reporting Period starts immediately after the end of the **policy period** of the applicable Coverage Part.

   **2.** Optional Extended Reporting Periods

   **a.** The **named insured** shall have the option to purchase a 12 month Extended Reporting Period to replace the 90 day Automatic Extended Reporting Period for an additional premium equal to 75% of the expiring annual premium for the applicable Coverage Part.

   **b.** Additional Optional Extended Reporting Periods may be available for an additional premium charge if an Extended Reporting Period longer than 12 months is desired. It is solely our decision whether to permit the first **named insured** to purchase an Extended Reporting Period with a term longer than 12 months.

   The first **named insured** must give us a written request of their intent to purchase an Optional Extended Reporting Period within 60 days after the **policy period** of the applicable Coverage Part or that option shall terminate. The Optional Extended Reporting Period will not go into effect unless the first **named insured** pays the additional premium promptly when due.

**B.** The Extended Reporting Periods do not extend the **policy period** or change the scope of coverage provided. They extend the **claims** reporting period.

**C.** The Extended Reporting Periods extend coverage to **claims** first made during the length of time covered by the applicable Extended Reporting Period provided the **wrongful act** was committed, attempted or allegedly committed or attempted prior to the end of the **policy period** of the applicable Coverage Part, and all such **claims** shall be subject to all other terms, conditions and exclusions of the applicable Coverage Part and the General Provisions. Such **claims** must be reported in writing to us prior to the expiration of the applicable Extended Reporting Period.

**D.** The Extended Reporting Period, regardless of length does not reinstate or increase the Limits of Insurance of the applicable Coverage Part or the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations. Our total liability shall not exceed the Limit of Insurance shown in the applicable Declarations for the last **policy year** in which coverage is provided hereunder.

**E.** Any Extended Reporting Period will immediately terminate on the effective date and time of any other insurance issued to the **insureds** which replaces this insurance. The entire premium for any Extended Reporting Period shall be fully earned at the commencement of any Extended Reporting Period.

**F.** If the terms under this section are invoked under the Cincinnati Data Defender™ Coverage Part or the Cincinnati Cyber Defense™ Coverage Part, the term **claim** as used in this section may also mean **regulatory proceeding.**

## SECTION XX - COVERAGE TERRITORY

This policy applies to any **claim** for a **wrongful act** committed, attempted or allegedly committed or attempted anywhere in the world unless indicated otherwise. However, if insurance provided by this policy would be in violation of any United States economic or trade sanctions, such insurance shall be null and void.

ML 101 01 20 
Page 9 of 10

Bates page 15

## SECTION XXI - LIBERALIZATION

If we adopt any revision that would broaden the coverage under this insurance and would be effective during the **policy period** without additional premium, the broadened coverage will immediately apply to this insurance as of the latter of:

**A.** The date we implemented the change in the headquarters state which is the basis upon which the policy was issued; or

**B.** The date the applicable Coverage Part became effective.

## SECTION XXII - PARENT COMPANY AND FRANCHISOR EXTENSION

Upon written request of the president, chairperson or equivalent position of the **named insured,** we shall extend coverage under this policy to **defense costs** resulting from any **claim** made against a parent company or franchisor of the **named insured** or any **subsidiary** but only if and so long as:

**A.** The **claim** arises out of a **wrongful act** actually or allegedly committed solely by an **insured;**

**B.** The **insured** is included as a co-defendant in addition to the parent company or franchisor; and

**C.** The **insured** as well as the parent company or franchisor are represented by the same counsel in connection with such **claim.**

For the purposes of this extension, a parent company or franchisor shall include:

**A.** Any entity other than a natural person which owns more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors, trustees, managers (if a limited liability company) or equivalent of a **named insured** or **subsidiary;** or

**B.** Any franchisor who has granted to an **insured** under a franchise agreement any franchise or franchise rights to allow the **insured** to operate as a franchisee or a franchised dealer.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION XXIII – STATE INCONSISTENCY

In the event there is an inconsistency between a state amendatory endorsement attached to this policy and any term or condition of this policy, then where permitted by law, we shall apply those terms and conditions which are most favorable to the **insured.**

ML 101 01 20                                                                                                          Page 10 of 10

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

Your policy (or the policy proposed to you) contains coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- The portion of your premium that is attributable to coverage for terrorist acts certified under the Act is

  $ 0_____ .

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER OF COVERAGE AND (2) AT THE TIME COVERAGE IS ISSUED.

IA 4234 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS**

A. **SECTION I – DEFINITIONS** is amended to add the following:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. **CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

C. **APPLICATION OF OTHER EXCLUSIONS**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion does not serve to create coverage for any **loss** which would otherwise be excluded under this policy, such as **losses** excluded by:

1. Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

2. Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

3. Any other exclusion,

regardless if the **certified act of terrorism** contributes concurrently or in any sequence to the **loss**.

D. **SUNSET CLAUSE**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

All other provisions of the policy remain unchanged except as herein expressly modified.

Includes copyrighted material of Insurance Services Office, Inc., and American Association of Insurance Services, Inc., with their permission.

ML 458 01 16

**Bates page 18**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## ILLINOIS CHANGES - PILLAR POLICY PROGRAM

---

This endorsement modifies insurance provided under the following:

GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS
BANKERS PROFESSIONAL LIABILITY COVERAGE
COMMUNITY ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE
EDUCATORS LEGAL LIABILITY COVERAGE
EMPLOYMENT PRACTICES LIABILITY COVERAGE
FIDUCIARY LIABILITY COVERAGE
FINANCIAL INSTITUTIONS DIRECTORS AND OFFICERS LIABILITY COVERAGE
HEALTHCARE INSTITUTIONS DIRECTORS AND OFFICERS LIABILITY COVERAGE
NONPROFIT ORGANIZATION DIRECTORS AND OFFICERS LIABILITY COVERAGE
PRIVATELY HELD COMPANY DIRECTORS AND OFFICERS LIABILITY COVERAGE
PUBLICLY TRADED COMPANY DIRECTORS AND OFFICERS LIABILITY COVERAGE
TRUST SERVICES ERRORS AND OMISSIONS COVERAGE

A. The following is added to Paragraph **B. Pollution** in **SECTION II - EXCLUSIONS** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS**:

However, Paragraphs **1.**, **2.** and **3.** shall not apply to **loss** resulting from a hostile fire if, and to the extent, **loss** resulting from any **claim** is based upon, attributable to or arising out of heat, smoke or fumes. Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

B. Paragraph **E.** of **SECTION IV - LIMITS OF INSURANCE, DEDUCTIBLES, MULTIPLE CLAIMS AND EXHAUSTION** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is deleted in its entirety and replaced by the following:

    E. Regardless of the number of policies or Coverage Parts involved, all **claims** based upon or arising out of the same **wrongful act** or any **interrelated wrongful acts** shall be considered a single **claim**. However, **wrongful act(s)** or **interrelated wrongful acts** that happen to different persons at different times will not be deemed one **wrongful act**. Each **claim** shall be deemed to be first made at the earliest of the following times:

        1. When notice of the earliest **claim** arising out of such **wrongful act** or **interrelated wrongful acts** is received in writing by an **insured** or by us, whichever comes first; or

        2. When notice of a **wrongful act** giving rise to such **claim** is given pursuant to Section **VI** of the General Provisions.

C. Paragraph **C.** of **SECTION IX - CHANGES IN EXPOSURE** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is deleted in its entirety and replaced by the following:

    C. **Acquisition or Formation of Entity**

    If during the **policy period** of the applicable Coverage Part the **named insured** newly acquires or forms another entity over which such **named insured** maintains more than 50% ownership for the purpose of coverage under the Coverage Part applicable to such **named insured**, the newly acquired or formed entity shall be deemed to be a **subsidiary**; however, if such newly acquired or formed entity has insurance provided by other insurers against a **loss** covered by this policy, we shall not be liable under this policy for a greater proportion of such **loss** and claim expenses that the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such **loss**. Furthermore; coverage does not apply to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to the date the **named insured** acquired or formed the entity unless we agree, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for such **claims** and the **named insured** pays any additional premium we require for the endorsement.

Bates page 19

**D. SECTION X - OTHER INSURANCE ISSUED BY ANOTHER INSURER** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is deleted in its entirety and replaced by the following:

**SECTION X - OTHER INSURANCE**

If any **loss** resulting from any **claim** is insured by any other valid policy, we shall not be liable under this policy for a greater proportion of such **loss** than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such **loss**, unless such other insurance is purchased specifically to apply in excess of the Limit of Liability stated in the Declarations of this policy.

**E. SECTION XIX - EXTENDED REPORTING PERIODS** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is amended as follows:

1. The first sentence of Paragraph **A.** is deleted in its entirety and replaced by the following:

    Upon termination of any Coverage Parts for any reason, the **named insured** shall be provided a 90 day Automatic Extended Reporting Period and have the option replace the 90 day Automatic Extended Reporting Period with a 12 month Optional Extended Reporting Period.

2. Paragraph **E.** is deleted in its entirety and replaced by the following:

    E. Any Extended Reporting Period may be cancelled by the **named insured** on the effective date and time of any other insurance issued to the **insureds** which replaces this insurance. If the **named insured** notifies us of the effective date of the other insurance, we will refund any pro rata unearned premium.

**F. SECTION XX - COVERAGE TERRITORY** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is deleted in its entirety and replaced by the following:

**SECTION XX - COVERAGE TERRITORY**

This policy applies to any **claim** for a **wrongful act** committed, attempted or allegedly committed or attempted anywhere in the world unless indicated otherwise. However, if insurance provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

**G.** In the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS**, the term spouse is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**H.** With respect to the **DEFINITIONS** Section of all Coverage Parts, the words "other than that portion of our employed attorneys' fees, salaries and expenses allocated to a specific **claim**" are deleted from all definitions of the term **defense costs**.

**I.** With respect to the **DEFINITIONS** Section of all Coverage Parts, the words "prejudgment and postjudgment interest" are deleted from all definitions of the term **loss**.

**J.** With respect to the **DEFINITIONS** Section of all Coverage Parts, the following paragraph is added to all definitions of the term **loss**:

In no event will punitive, exemplary or multiplied damages be insurable under this contract of insurance with respect to a **claim** brought against an Illinois domiciled insured in an Illinois state court, except to the extent such damages are insurance under Illinois law. Illinois law dictates that an insurer may not reimburse an insured for punitive damages assessed as a result of the insured's own misconduct.

**K. SECTION VII - SUPPLEMENTARY PAYMENTS** of **EMPLOYMENT PRACTICES LIABILITY COVERAGE** is amended to include the following:

C. Prejudgment interest awarded against the **insured** on that part of the judgment we pay; provided, however, if we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

D. All interest of the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

All other provisions of the policy remain unchanged except as herein expressly modified.

ML 487 IL 01 18

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

**Bates page 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**PILLAR POLICY PROGRAM**

The following provision is added:

**CANCELLATION AND NONRENEWAL**

A. The first **named insured** may cancel this policy or any of its Coverage Parts by mailing to us advance written notice of cancellation.

B. We may cancel this policy by mailing to the **named insured** written notice stating the reason for cancellation. If we cancel:

  1. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

  2. For a reason other than nonpayment of premium, we will mail the notice at least:

      a. 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      b. 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days. Such notice may only be sent for cancellation effective at a policy anniversary at the end of a **policy year**.

C. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

  1. Nonpayment of premium;

  2. The policy was obtained through a material misrepresentation;

  3. Any insured has violated any of the terms and conditions of the policy;

  4. The risk originally accepted has measurably increased;

  5. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

  6. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

D. Notice of cancellation will state the effective date of cancellation. The **policy period** will end on that date.

E. If this policy is cancelled, we will send the first **named insured** any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

F. If we decide not to renew or continue this policy, we will mail the **named insured** and the **named insured's** agent or broker written notice, stating the reason for nonrenewal, at least 60 days before:

  1. The expiration date of this policy; or

  2. The end of a **policy year**, if the policy is written for a term of more than one year.

  If we offer to renew or continue and the **named insured** does not accept, this policy will terminate at the end of the current **policy period**. Failure to pay the required renewal or continuation premium when due shall mean that the **named insured** has not accepted our offer.

  If we fail to mail proper written notice of nonrenewal and the **named insured** obtains other insurance, this policy will end on the effective date of that insurance.

G. We will mail cancellation and nonrenewal notices to the **named insured**, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

All other provisions of the policy remain unchanged except as herein expressly modified.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

ML 488 IL 03 16

**Bates page 21**

# NOTICE OF LOSS CONTROL SERVICES

The Cincinnati Insurance Companies provide certain loss prevention services to policyholders at no additional cost. These services are designed to prevent or reduce the impact of potential loss causing events or conditions related to the type(s) of insurance coverage you have purchased from us. One of these services that you can receive is described below:

Employment Practices Liability (EPL) Toll-Free Hot Line

Have a question on how to handle an employment situation? Simply call The Cincinnati Insurance Companies Employment Connection at 1-888-811-3427 for assistance. We offer policyholders an unlimited number of calls seeking advice on employment policies and procedures.

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice. Use of the EPL Toll-Free Hot Line will not be deemed to satisfy any notice of claim or notice of wrongful act provision contained in any policy.

IA 4427 02 13

**Bates page 22**

# IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to contact the Illinois Department of Insurance, it maintains a Consumer Division at:

122. S. Michigan Ave., 19th Floor, Chicago, Illinois 60603; and

320 West Washington Street, Springfield, Illinois 62767,

You may also reach the Illinois Department of Insurance at http://insurance.illinois.gov; or

312-814-2420 or 217-782-4515.

Should you have any complaints arise regarding this insurance you may contact the following:

Complaint Department of The Cincinnati Insurance Company at P.O. Box 145496, Cincinnati, Ohio, 45250-5496.

Public Service Section of the Department of Insurance at Illinois Department of Insurance, Consumer Division, Springfield, Illinois, 62767.

IA 4433 IL 03 17

**Bates page 23**

## NOTICE OF LOSS CONTROL SERVICES - COMMUNITY ASSOCIATIONS

The Cincinnati Insurance Companies provide certain loss control services to policyholders at no additional cost. These services are designed to help you prevent or reduce the impact of a potential loss related to the type(s) of insurance coverage you have purchased from us. One of these services that you can receive is described below:

### Community Association Toll-Free Help Line

If you have a question or concern about reducing or avoiding a potential wrongful acts loss, please call 844-458-9556 for assistance. Please leave your contact information, policy number and your question or concern, and a lawyer will return your call, usually within one business day. Calls will be subject to a one hour per policyholder time limit.

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, policyholders should consult legal counsel in your state to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice. Use of the Community Association Toll-Free Help Line will not be deemed to satisfy any notice of claim or notice of wrongful act provision contained in any policy. Refer to your policy for a complete statement of coverages, exclusions and limits of insurance.

IA 4486 03 17

**Bates page 24**

# NOTICE OF PRIVACY PRACTICES

For additional information on our privacy policies, including state specific information, please visit https://www.cinfin.com/privacy-policy.

IA 4521 03 20

Page 1 of 1

**Bates page 25**

## IMPORTANT INFORMATION TO POLICYHOLDERS
## ILLINOIS

In the event you need to contact someone about this policy for any reason, please contact your agent.  If you have additional questions, you may contact the insurance company issuing this policy at the following address or telephone collect:

The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Casualty Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Indemnity Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

IP 409IL (1/91)

**Bates page 26**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

IP 446 08 01

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                                President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

**Bates page 28**

# The Cincinnati Insurance Company

A Stock Insurance Company

## COMMUNITY ASSOCIATION
## DIRECTORS AND OFFICERS LIABILITY
## COVERAGE PART DECLARATIONS

THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.

Policy Number: EMO 047 93 41

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

| | | |
|---|---|---|
| Limit of Insurance: | $ 1,000,000 | in the aggregate |
| Investigative Costs Sublimit: | $ 100,000 | in the aggregate |
| Excess Benefit Transaction Tax Sublimit: | $ 20,000 | sublimit per **organizational manager** |

| | | |
|---|---|---|
| Additional Defense Limit of Insurance: | $ NOT COVERED | in the aggregate |

| | | |
|---|---|---|
| Excess Side A Limit of Insurance: | $ NOT COVERED | in the aggregate |

| | | |
|---|---|---|
| | $ 0 | each **claim** under Insuring Agreement **A** (Insured Persons) |
| Deductibles: | $ 2,500 | each **claim** under Insuring Agreement **B** (Indemnification) |
| | $ 2,500 | each **claim** under Insuring Agreement **C** (Organization) |

| | |
|---|---|
| Retroactive Date: | N/A |
| Prior or Pending Date: | 03-01-2018 |
| Continuity Date: | 03-01-2018 |

Forms and endorsements applicable to this coverage part:
ML106     01/18  COMMUNITY ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE

_____

03-01-2021 09:51

ML 506 01 16

EMO 047 93 41

**Bates page 30**

# COMMUNITY ASSOCIATION
# DIRECTORS AND OFFICERS LIABILITY COVERAGE

### TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|
| SECTION I - INSURING AGREEMENTS | 2 |
| SECTION II - DEFINITIONS | 2 |
| SECTION III - EXCLUSIONS | 5 |
| SECTION IV - SEVERABILITY OF EXCLUSIONS | 6 |
| SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLES | 6 |
| SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT | 7 |

Bates page 31

# COMMUNITY ASSOCIATION
# DIRECTORS AND OFFICERS LIABILITY COVERAGE

THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.

## SECTION I - INSURING AGREEMENTS

A. We will pay on behalf of the **insured persons** all **loss** which they shall be legally obligated to pay, except for such **loss** which the **organization** actually pays as indemnification, resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.

B. We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay as indemnification to the **insured persons** resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.

C. We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, against the **organization** for a **wrongful act**.

We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

## SECTION II - DEFINITIONS

Where set forth in bold type in this Coverage Part, whether in singular or in plural, the following terms shall have the meanings indicated.

A. **Claim** means:

1. A written demand for monetary damages or non-monetary relief;

2. A civil proceeding commenced by the filing of a complaint or similar pleading;

3. A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

4. An arbitration, mediation or similar alternative dispute resolution proceeding in which monetary damages are sought if the **insured**:

   a. Is required to participate in such proceeding; or

   b. Agrees to participate in such proceeding with our written consent, such consent not to be unreasonably withheld;

5. A criminal proceeding commenced by the return of an indictment;

6. A written request to toll or waive a statute of limitations related to a potential **claim** described in Definitions **A.1** through **A.5.** above; or

7. A civil, administrative, regulatory or criminal investigation of an **insured person** once such **insured person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definitions **A.2.**, **A.3** or **A.5.** may be commenced. The maximum Limit of Insurance for all such investigations against any **insured persons** shall be the Investigative Costs Sublimit set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. This sublimit shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and does not increase our maximum aggregate liability under this Coverage Part;

against any **insured**, including any appeal therefrom.

ML 106 01 18                                                                                          Page 2 of 7

Bates page 32

B. **Defense costs** means reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim**. **Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds).

   **Defense costs** shall not include:

   1. Salaries, wages, fees, overhead or expenses of our employees or any **insureds**, directors, officers, trustees or employees, other than that portion of our employed attorneys' fees, salaries and expenses allocated to a specific **claim**;

   2. Any amount covered by the duty to defend obligation of any other insurer; or

   3. Any pre-tender fees, costs or expenses.

C. **Directors and officers** means all natural persons who were, now are, or shall become an officer, a duly elected or appointed member of the board of directors, trustees, regents, managers, governors, a **LLC manager** or an equivalent position of the **organization**.

D. **Disqualified person** means a disqualified person as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

E. **Employee** includes, but is not limited to, all natural persons who were, now are, or shall become full-time, part-time, seasonal, volunteer, contingent or leased workers of the **organization** as determined by federal, state or local law. **Employee** does not include independent contractors as determined by federal, state or local law.

F. **Employment related wrongful act** means a **wrongful act** arising from employment related activities including, but not limited to, hiring, training, supervision, evaluation, promotion, demotion, granting of tenure, and termination.

G. **Excess benefit transaction** means an excess benefit transaction as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

H. **Excess benefit transaction tax** means any excise tax imposed by the Internal Revenue Service on any **insured** who is an **organizational manager** as a result of such **insured's** participation in an **excess benefit transaction**.

I. **Executive** means any natural person who was, now is or shall become the chairperson, president or person of equivalent position to any of the foregoing of the **organization**.

J. **Financial impairment** means, with respect to the **organization** or any **outside organization**, the appointment of any receiver, conservator, liquidator, rehabilitator, trustee or similar official; or the **organization** or any **outside organization** becoming a **debtor in possession**.

K. **Insured** means the **organization** and the **insured persons**.

L. **Insured persons** means:

   1. **Directors and officers**;

   2. All natural persons who were, now are, or shall become an **employee** or committee member, whether or not they were, are or shall be compensated, of the **organization**;

   3. All natural persons who were, now are, or shall become members or volunteers of the **organization** while acting on behalf of the **organization** in a voluntary capacity at the direction of the **directors and officers**; and

   4. Any natural person who is a property manager or an employee of a property management company, but only for **claims** arising out of their **wrongful acts** while acting at the direction of the **named insured** or any **subsidiary** or arising out of the **wrongful acts** of the **insureds** for which the property management company's employees are vicariously liable; provided, however, that any coverage under this Coverage Part for any such property manager shall be excess of any indemnification or insurance otherwise available to such property manager from any other source.

M. **LLC manager** means any natural person who was, now is or shall become a manager, member of the board of managers or member of the **organization** that is a limited liability company but only with respect to the conduct of the limited liability company's business. However, any member of a limited liability company who is a passive investor not involved in the operations of the limited liability company is not a **LLC manager**.

ML 106 01 18                                                                          Page 3 of 7

Bates page 33

N. **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages, judgments, settlements, prejudgment and postjudgment interest, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary or multiplied damages.

**Loss** shall also include:

Any **excess benefit transaction tax** an **insured** is obligated to pay as a result of a **claim**. The maximum Limit of Insurance per each **organizational manager** for any **excess benefit transaction tax** shall be the Excess Benefit Transaction Tax Sublimit set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. This sublimit shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and does not increase our maximum aggregate liability under this Coverage Part. The **excess benefit transaction tax** shall not include the 25% excise tax assessed against any **disqualified person** or the 200% tax assessed for failure to correct an **excess benefit transaction**.

**Loss** shall not include:

1. Taxes, criminal or civil fines or penalties imposed by law, except as noted above;

2. Any restitution, disgorgement or similar sums; or

3. Any matter deemed uninsurable under the law pursuant to which this Coverage Part shall be construed.

O. **Organization** means:

1. The **named insured**;

2. Any **subsidiary**; and

3. A property management company, but only for claims arising out of its **wrongful acts** while acting at the direction of the **named insured** or arising out of the **wrongful acts** of the **insureds** for which the property management company is vicariously liable.

P. **Organizational manager** means an organizational manager as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

Q. **Outside organization** means any nonprofit corporation or organization other than the **organization**, which is described in Section 501(c)(2), (3), (4), (6), (7), (8), (10), (19), or 501(d) of the Internal Revenue Code of 1986, as amended, and is exempt from federal income taxation.

R. **Outside position** means the service of any **insured person** of the **organization** as an officer or member of the board of directors, trustees, regents, managers, governors, or equivalent position in any **outside organization** but only during the time that such service is performed at the direction of the **organization** or with the consent and knowledge of the **organization**.

S. **Personal injury** means invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, false detention, abuse of process, malicious prosecution, libel, slander, defamation, or disparaging of a person's or organization's goods, products or services.

T. **Property damage** means:

1. Injury or damage, of any nature, to tangible or intangible property, including all resulting loss of use of that property; or

2. Loss of or loss of use of tangible or intangible property that is not otherwise injured or damaged.

U. **Publishers liability** means infringement of copyright, trademark, service mark or trade name, unauthorized use of title, plagiarism or misappropriation of ideas.

V. **Third party** means any natural person who is not an **employee** of the **organization**.

W. **Wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty including any **personal injury** or **publishers liability** committed, attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and prior to the end of the **policy period** by:

1. Any of the **insured persons** in the discharge of their duties solely in their capacity as **insured persons** of the **organization**;

ML 106 01 18 Page 4 of 7

Bates page 34

2. Any of the **insured persons** of the **organization** in the discharge of their duties solely in their capacity in an **outside position** in any **outside organization**;

3. Any of the **insured persons** solely by reason of their status as such; or

4. The **organization**.

---

## SECTION III - EXCLUSIONS

The descriptions in the headings of these exclusions are solely for convenience and form no part of the terms and conditions of coverage.

A. Bodily Injury/Property Damage

We are not liable to pay, indemnify or defend any **claim** for actual or alleged:

1. Bodily injury, sickness, disease, or death of any person, mental anguish, or emotional distress; or

2. **Property damage**, including, but not limited to, physical injury, loss of or loss of use of currency or any negotiable or non-negotiable instruments or contracts representing money.

B. Conduct

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of any of the **insureds** or any person for whose actions the **insureds** are legally responsible:

1. Committing any deliberately fraudulent act or omission;

2. Committing any willful violation of any statute or regulation; or

3. Gaining any profit, remuneration or advantage to which they were not legally entitled;

if established by a final and non-appealable judgment or adjudication in any underlying action or proceeding adverse to the **insureds** as to such conduct.

With respect to determining the applicability of this exclusion, no conduct pertaining to any **insured person** shall be imputed to any other **insured person**; however, any conduct pertaining to any **executive** shall be imputed to the **organization** to determine if coverage is available.

C. Contract

We are not liable to pay, indemnify or defend any **claim** for any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:

1. To the extent the liability would have attached to any such **insureds** in the absence thereof; or

2. With respect to **defense costs** only, any **claim** brought by or on behalf of any member of the **organization** which is based upon, arising from, or in consequence of any actual or alleged breach of the **organization's** covenants, conditions and restrictions or by-laws;

provided, however, that this exclusion shall not apply to **defense costs** with respect to any **claim** against any **insured persons**.

D. Cyber

We are not liable to pay, indemnify or defend any **claim** for any actual or alleged:

1. Improper dissemination of personally identifiable information or protected health information;

2. Liability of any **insured** arising out of internet and electronic services which are performed for or on behalf of any client or customer of the **organization** through the transmission of electronic data to or from the **organization's** internet website or through a private computer network controlled by the **organization**; or

3. Liability of any **insured** for internet professional services the **organization** provides to others which may include, but are not limited to, application service provider, domain name registration services, electronic exchange and auction services, internet hosting services, internet media services, internet service provider service, managed and network security services, public key infrastructure services, search engine services, web portal services, website development, software development and internet access provider;

**Bates page 35**

provided, however, that this exclusion shall not apply to any **claim** to which Insuring Agreement **A.** solely applies.

**E.** Employment Practices

We are not liable to pay, indemnify or defend any **claim** for an **employment related wrongful act**.

**F.** ERISA

We are not liable to pay, indemnify or defend any **claim** for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended or any rules, regulations or orders promulgated thereunder or any similar provisions of any federal, state or local statutory or common law in connection with any pension or welfare plan established for the benefit of **employees** of the **organization**.

**G.** Intellectual Property

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of any actual or alleged infringement of patent or misappropriation of trade secrets or other intellectual property rights; provided, however, that this exclusion shall not apply to any **publishers liability**. Furthermore, this exclusion shall not apply to any **claim** against any **insured persons**.

**H.** Organization vs. Insured

We are not liable to pay, indemnify or defend any **claim** brought or maintained by the **organization**; provided, however, that this exclusion does not apply to any **claim** brought or maintained as a derivative action on behalf of the **organization** by one or more persons who are not **insured persons** and who bring and maintain the **claim** without the solicitation, assistance or participation of any of the **insureds**.

**I.** Outside Service

We are not liable to pay, indemnify or defend any **claim** for any **wrongful act** in the discharge of the duties of any of the **insured persons** as a director, officer, trustee, employee, volunteer or member of any entity other than the **organization**, even if directed or requested to serve such other entity by the **organization**; provided, however, that this exclusion shall not apply to the extent:

**1.** Such **claim** is based on the service of an **insured person** in an **outside position**; and

**2.** The **loss** resulting from such **claim** is not indemnified by the **outside organization** or any of its insurers.

**J.** Third Party Discrimination or Sexual Harassment

We are not liable to pay, indemnify or defend any **claim** for any discrimination against or sexual harassment of any **third party**.

## SECTION IV - SEVERABILITY OF EXCLUSIONS

With respect to determining the applicability of the above exclusions, no **wrongful act** or knowledge possessed by any one of the **insureds** shall be imputed to any other **insureds** to determine if coverage is available, unless indicated otherwise.

## SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLES

**A.** We will pay 100% of **loss** in excess of the applicable Deductible amount set forth in the Community Association Directors and Officers Liability Coverage Part Declarations up to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations, subject to the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations.

**B.** In the event a single **claim** is covered under more than one Insuring Agreement, the Deductibles set forth in the Community Association Directors and Officers Liability Coverage Part Declarations shall be applied separately to the part of the **loss** resulting from such **claim** covered by each Insuring Agreement and the sum of the Deductibles so applied shall constitute the Deductible for each single **claim**; provided, however, that the total Deductible as finally determined shall in no event exceed the largest of the applicable Deductibles. Notwithstanding the aforementioned, the Deductible applicable to Insuring Agreement **B.** shall apply to **loss** payable under any of the Insuring Agreements for which indemnification by the **organization** is legally permissible, whether or not actual indemnification is granted, unless the **organization** fails to indemnify any **insured person** due to the **financial impairment** of the **organization**. The Deductible shall be paid by the **organization**. Any **loss** paid by us within the Deductible shall be reimbursed by the **organization** within 30 days of our written request for such reimbursement.

ML 106 01 18                                                                                                          Page 6 of 7

**Bates page 36**

C. **Defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations. **Defense costs** we pay shall reduce such Limits of Insurance. **Defense costs** paid by the **organization** shall be applied against the Deductible.

D. Our maximum aggregate liability for all **loss** resulting from all **claims** under this Coverage Part shall be the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations, subject to the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations.

E. If an Additional Defense Limit of Insurance is set forth in the Community Association Directors and Officers Liability Coverage Part Declarations, **defense costs** will apply first to and reduce the Additional Defense Limit of Insurance. The Additional Defense Limit of Insurance will be in addition to and not part of the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. The Additional Defense Limit of Liability is applicable to **defense costs** only. **Defense costs** paid by the **organization** shall be applied against the Deductible.

Upon exhaustion of the Additional Defense Limit of Insurance, **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. **Defense costs** we pay shall reduce the Limit of Insurance.

F. If an Excess Side A Limit of Insurance is set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and if the Limit of Insurance has been exhausted, we provide the **insured persons** with an excess limit of insurance under Insuring Agreement **A.** Such Excess Side A Limit of Insurance will not exceed the amount set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. The Excess Side A Limit of Insurance is in addition to and not part of the Limit of Insurance, and it applies solely to **loss** resulting from any **claim** against an **insured person** to which Insuring Agreement **A.** is applicable

G. It is agreed that:

1. If a **loss** from any **claim** is payable but such payment would exceed the remaining applicable Limit of Insurance as set forth in the Community Association Directors and Officers Liability Coverage Part Declarations, we will first pay the unpaid portion of such **loss** under Insuring Agreement **A.**; then to the extent that any amount of the applicable Limit of Insurance shall remain available, we will pay such **loss** to which Insuring Agreements **B.** and **C.** apply.

2. Upon written request of the president, chairperson or equivalent position of the **named insured**, we shall withhold payment of a covered **loss** under Insuring Agreements **B.** and **C.** until the president, chairperson or equivalent position of the **named insured** directs us to pay such covered **loss**. Such request shall not delay any payment under Insuring Agreement **A.**

## SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT

A. We will have the right and duty to select counsel and defend the **insureds** against any **claim**; however, we will have no duty to defend the **insureds** against any **claim** to which this insurance does not apply.

B. We may make any investigation we deem necessary and may, with the consent of the **insureds** named in connection with the **claim**, make any settlement of any **claim** we deem expedient. If the **insureds** withhold consent to such settlement, our liability for all **loss** in connection with such **claim** shall not exceed:

1. The amount of the proposed settlement plus **defense costs** incurred up to the date of the **insured's** refusal to consent to the proposed settlement; plus

2. 90% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 90% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement, subject in all events to the applicable Limit of Insurance and Deductible for such **claim**. The remaining 10% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 10% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement shall be borne by the **insureds**, uninsured and at their own risk.

C. Our right and duty to defend end when we have used up the applicable Limit of Insurance in the defense or payment of damages, judgments or settlements of covered **claims**.

ML 106 01 18                                                                                                    Page 7 of 7

**Bates page 37**

# The Cincinnati Insurance Company

A Stock Insurance Company

# EMPLOYMENT PRACTICES LIABILITY
# COVERAGE PART DECLARATIONS

THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.

Policy Number: EMO 047 93 41

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

| | | |
|---|---|---|
| Limit of Insurance: | $ 1,000,000 | in the aggregate |
| Optional Third Party Liability Sublimit | $ 1,000,000 | in the aggregate |
| Wage and Hour Defense Sublimit | $ 100,000 | in the aggregate |
| Immigration Defense Sublimit | $ 100,000 | in the aggregate |
| Additional Defense Limit of Insurance: | $ NOT COVERED | in the aggregate |

| | | |
|---|---|---|
| Deductibles: | $ 2,500 | each **claim** under Insuring Agreement **A** (Employment Practices) |
| | $ 2,500 | each **claim** under Insuring Agreement **B** (Third Party) |

| | |
|---|---|
| Retroactive Date: | N/A |
| Prior or Pending Date: | 02-21-2019 |
| Continuity Date: | 02-21-2019 |

Forms and endorsements applicable to this coverage part:
ML112     01/18 EMPLOYMENT PRACTICES LIABILITY COVERAGE

ML 512 01 16

**Bates page 38**

03-01-2021 09:51

ML 512 01 16

EMO 047 93 41

**Bates page 39**

# EMPLOYMENT PRACTICES LIABILITY COVERAGE

## TABLE OF CONTENTS

| Coverage Part Provision: | Begins on Page: |
|---|---|
| SECTION I - INSURING AGREEMENTS | 2 |
| SECTION II - DEFINITIONS | 2 |
| SECTION III - EXCLUSIONS | 6 |
| SECTION IV - SEVERABILITY OF EXCLUSIONS | 7 |
| SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLE | 7 |
| SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT | 8 |
| SECTION VII - SUPPLEMENTARY PAYMENTS | 8 |

**Bates page 40**

# EMPLOYMENT PRACTICES LIABILITY COVERAGE

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

## SECTION I - INSURING AGREEMENTS

**A.** We will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **employment claim** or **immigration claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for an **employment wrongful act** or **immigration wrongful act**.

**B.** If Optional Third Party Liability is purchased as set forth in the Employment Practices Liability Coverage Part Declarations, we will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **third party claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **third party wrongful act**.

We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

## SECTION II - DEFINITIONS

Where set forth in bold type in this Coverage Part, whether in singular or in plural, the following terms shall have the meanings indicated.

**A.** **Benefits** means perquisites, fringe benefits, payments in connection with an employee benefit plan and any other payment, other than salary, wages or commissions to or for the benefit of an **employee** arising out of the employment relationship.

**B.** **Claim** means an **employment claim,** an **immigration claim** or a **third party claim**.

**C.** **Defense costs** means reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim**. **Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds).

**Defense costs** shall not include:

**1.** Salaries, wages, fees, overhead or expenses of our employees or any **insureds**, directors, officers, trustees or employees, other than that portion of our employed attorneys' fees, salaries and expenses allocated to a specific **claim**;

**2.** Any amount covered by the duty to defend obligation of any other insurer; or

**3.** Any pre-tender fees, costs or expenses.

**D.** **Employee** includes, but is not limited to, full-time, part-time, seasonal, volunteer, contingent or leased workers as determined by the federal, state or local law. **Employee** does not include independent contractors as determined by federal, state or local law.

**E.** **Employment claim** means:

**1.** A written demand for monetary damages or non-monetary relief;

**2.** A civil proceeding commenced by the filing of a complaint or similar pleading;

**3.** A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

**4.** An arbitration, mediation or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured** is required or agrees to participate in such proceeding with our written consent;

ML 112 01 18

Page 2 of 8

Bates page 41

5. In the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause or written demand for monetary or non-monetary relief, commenced by the receipt by an **insured** of such Notice, Order or written demand; or

6. A written request to toll or waive a statute of limitations relating to a potential **employment claim** described in Definitions **E.1.** through **E.5.** above;

which is brought by or on behalf of any past, present or prospective **employee(s)** of the **organization** against any of the **insureds**, including any appeal therefrom.

F. **Employment wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed for:

1. Wrongful discharge, dismissal or termination of employment, including constructive discharge;

2. Breach of any oral, written or implied employment contract or quasi-employment contract other than any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement;

3. Employment related misrepresentation;

4. Violation of any federal, state or local law that concerns employment discrimination:

   a. Including:

      1. Sexual harassment involving unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature; or

      2. Workplace bullying or workplace harassment of a non-sexual nature;

   b. That:

      1. Are made a condition of employment;

      2. Are used as a basis for employment decisions; or

      3. Create a work environment that is intimidating, offensive, hostile or interferes with performance;

5. Wrongful failure to employ or promote;

6. Wrongful demotion;

7. Wrongful discipline;

8. Wrongful deprivation of a career opportunity;

9. Negligent hiring, supervision, promotion or retention;

10. Negligent evaluation;

11. Employment related **personal injury**;

12. Wrongful failure to grant tenure;

13. Employment related wrongful infliction of emotional distress;

14. Violation of the Family Medical Leave Act;

15. Wrongful **retaliation**;

16. Wrongful denial of training, denial or deprivation of seniority or evaluation;

17. Failure to adopt, create, provide or enforce adequate workplace or employment practices and procedures; or

18. Wrongful handling of any background check which is issued or expected to be used or collected in whole or in part for the purpose of serving as a factor in any employment related activities, including but not limited to any violation of the Fair Credit Reporting Act;

including any actual or alleged assault, battery, or loss of consortium in connection with Subparagraphs **1.** through **18.** above.

G. **Executive** means any natural person who was, now is or shall become the chairperson, president, chief executive officer, chief financial officer, executive director, in-house general counsel or person of equivalent position to any of the foregoing of the **organization**.

ML 112 01 18                                                                                                          Page 3 of 8

**Bates page 42**

H. **Immigration claim** means any criminal investigation of any **insured** by any governmental agency for any actual or alleged hiring of illegal aliens.

I. **Immigration wrongful act** means any actual or alleged violation of the Immigration Reform and Control Act of 1986 or any amendments to or rules, regulations or orders promulgated pursuant to it, or similar provisions of any federal, state, or local statutory or common law.

J. **Insured** means the **organization** and the **insured persons**.

K. **Insured persons** means:

1. All natural persons who were, now are, or shall become an officer or a duly elected or appointed member of the board of directors, trustees, regents, managers, governors, a **LLC manager** or an equivalent position of the **organization**;

2. All natural persons who were, now are, or shall become an **employee** or committee member, whether or not they were, are or shall be compensated, of the **organization**;

3. All natural persons who were, now are, or shall become members or volunteers of the **organization**, if the **organization** is nonprofit in nature, while acting on behalf of the **organization** in a voluntary capacity at the direction of the board of directors, trustees, regents, managers, governors, or an equivalent position; and

4. Any natural person who is an independent contractor as determined by federal, state or local law, but only while acting in the capacity as such for the **organization** pursuant to an express written agreement between the independent contractor, or any entity on behalf of the independent contractor, and the **organization** and only if the **organization** agrees in writing to provide indemnification to such independent contractor; provided, however, that any coverage under this Coverage Part for any such independent contractor shall be excess of any indemnification or insurance otherwise available to such independent contractor from any other source;

but only for acts with respect to their duties for or service to the **organization**.

L. **LLC manager** means any natural person who was, now is or shall become a manager, member of the board of managers or member of the **organization** that is a limited liability company but only with respect to the conduct of the limited liability company's business. However, any member of a limited liability company who is a passive investor not involved in the operations of the limited liability company is not a **LLC manager.**

M. **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages (including back pay and front pay), judgments, settlements, prejudgment and postjudgment interest, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary or multiplied damages.

**Loss** shall not include any amount for which an **insured** is not financially liable, compensation earned in the course of employment but not paid by an **insured** or matters which are deemed uninsurable under the law pursuant to which this Coverage Part shall be construed.

**Loss** shall not include, (other than **defense costs**):

1. **Benefits** or the equivalent value, however, this provision does not apply to **loss** resulting solely from wrongful termination of employment;

2. Amounts, which arise out of, are based upon, or are attributable to the employment reinstatement of the claimant by an **insured** or the continued employment of the claimant;

3. Future compensation, including salary or **benefits** for an **employee**, if the **insured** is ordered in accordance with a judgment or other final adjudication but fails to reinstate the claimant as an **employee**;

4. That part of any express contract of employment or an express obligation to make payments in the event of the termination of employment;

5. Salary, wages, commissions, **benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

6. Civil or criminal fines or penalties imposed by law, liquidated damages (other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act), payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law;

ML 112 01 18

Page 4 of 8

**Bates page 43**

7. Future compensation, including salary or **benefits** for an **employee** who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a **claim**; or

8. Medical, pension, disability, life insurance, stock option or other **employee** type **benefit**.

N. **Organization** means the **named insured** and any **subsidiary**.

O. **Personal injury** means injury, other than bodily injury, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Oral or written publication of material that libels, slanders or defames a past, present or prospective **employee**;

3. Invasion of a past, present or prospective **employee's** right of privacy;

4. Malicious prosecution; or

5. Abuse of process.

P. **Property damage** means:

1. Injury or damage, of any nature, to tangible or intangible property, including all resulting loss of use of that property; or

2. Loss of or loss of use of tangible or intangible property that is not otherwise injured or damaged.

Q. **Retaliation** means any actual or alleged wrongful termination of employment or other adverse employment action against a claimant with respect to any person's exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat of disclosure to a superior or to any governmental agency actual or alleged violations of the law, or having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

R. **Third party** means any natural person who is not an **employee** of the **organization**.

S. **Third party claim** means:

1. A written demand for monetary damages or non-monetary relief;

2. A civil proceeding commenced by the filing of a complaint or similar pleading;

3. A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

4. An arbitration, mediation or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured** is required or agrees to participate in such proceeding with our written consent; or

5. A written request to toll or waive a statute of limitations relating to a potential **third party claim** described in Definitions **S.1.** through **S.4.** above;

which is brought by or on behalf of any **third party** against any of the **insureds**, including any appeal therefrom.

T. **Third party wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Employment Practices Liability Coverage Part Declarations and prior to the end of the **policy period** by an **insured** or any person for whose acts the **insured** is legally liable for:

1. Discrimination by any **insured** against a **third party** in violation of any applicable federal, state or local statute, ordinance or common law;

2. Sexual or other harassment by any **insured**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **third party** which violates the civil rights of the **third party**; or

3. **Wrongful eviction** when arising out of discrimination or harassment by any **insured** against a **third party** in violation of any applicable federal, state or local statute, ordinance or common law.

U. **Wrongful act** means an **employment wrongful act**, an **immigration wrongful act** or a **third party wrongful act** attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set

ML 112 01 18 Page 5 of 8

**Bates page 44**

forth in the Employment Practices Liability Coverage Part Declarations and prior to the end of the **policy period** by an **insured** or any person for whose acts the **organization** is legally liable.

V. **Wrongful eviction** means the act of dispossessing or attempting to dispossess a **third party** of real property to which such **third party** claims a right to occupy, and such real property is owned, operated or controlled by the **organization**.

---

## SECTION III - EXCLUSIONS

The descriptions in the headings of these exclusions are solely for convenience and form no part of the terms and conditions of coverage.

A. Exclusions applicable to **loss** other than **defense costs**:

1. Americans With Disabilities Act

   This insurance does not apply to **loss** incurred by the **insured** in making physical changes, modifications, alterations, or improvements as part of an accommodation pursuant to the Americans With Disabilities Act or similar provisions of any federal, state or local statutory or common law; provided, however, that this exclusion does not apply to **defense costs**.

2. Wage and Hour (with Defense Sublimit)

   This insurance does not apply to any **claim** based upon, arising out of or in consequence of the Fair Labor Standards Act (except the Equal Pay Act) or any amendments to or rules, regulations or orders promulgated pursuant to it, or similar provisions of any federal, state, or local statutory or common law; except we shall reimburse the **insureds** for up to a maximum payment of the Wage and Hour Defense Sublimit set forth in the Employment Practices Liability Coverage Part Declarations in **defense costs** that exceed the Deductible amount as set forth in the Employment Practices Liability Coverage Part Declarations. Any payment of **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and such payment reduces the Limit of Insurance. However, this exclusion shall not apply to an **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the Fair Labor Standards Act by any **insured**.

3. Immigration (with Defense Sublimit)

   This insurance does not apply to any **immigration claim** except we shall reimburse the **insureds** for up to a maximum payment of the Immigration Claim Defense Sublimit set forth in the Employment Practices Liability Coverage Part Declarations in **defense costs** that exceed the Deductible amount as set forth in the Employment Practices Liability Coverage Part Declarations. Any payment of **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and such payment reduces the Limit of Insurance. However, this exclusion shall not apply to an **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the Immigration Reform and Control Act of 1986 by any **insured**.

B. Exclusions applicable to all **loss**:

1. Bodily Injury/Property Damage

   We are not liable to pay, indemnify or defend any **claim** for actual or alleged:

   a. Bodily injury, sickness, disease, or death of any person; or

   b. **Property damage**, including, but not limited to, physical injury, loss of or loss of use of currency or any negotiable or non-negotiable instruments or contracts representing money.

2. COBRA, ERISA, NLRA, OSHA and WARN (with Retaliation Carve Back)

   This insurance does not apply to any **claim** based upon, arising out of or in consequence of the:

   a. Consolidated Omnibus Budget Reconciliation Act of 1985;

   b. Employee Retirement Income Security Act of 1974 (except Section 510 thereof);

   c. National Labor Relations Act (including the Labor Management Relations Act of 1947);

   d. Occupational Safety and Health Act;

ML 112 01 18                                                                                          Page 6 of 8

Bates page 45

**e.** Worker Adjustment and Retraining Notification Act; or

any amendments to or rules, regulations or orders promulgated pursuant to these laws, or similar provisions of any federal, state, or local statutory or common law. However, this exclusion shall not apply to any **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the acts described in **B.2.a.** through **B.2.e.** above by any **insured**.

**3.** Contractual (Other than Employment Contract)

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:

**a.** To the extent the liability would have attached to any such **insureds** in the absence thereof; or

**b.** With respect to any **claim** for breach of an employment contract.

**4.** Labor Relations

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged:

**a.** Labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement; or

**b.** **Wrongful act** committed, attempted, or allegedly committed or attempted concurrent with or after a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations.

**5.** Workers' Compensation, Unemployment, Social Security and Disability (with Retaliation Carve Back)

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged obligation of any **insured** under any workers' compensation, unemployment insurance, social security, disability benefits or similar law, or derivative actions arising out of any of these. However, this exclusion shall not apply to any **employment claim** for retaliatory treatment by an **insured** due to the exercise of rights granted under any such law.

## SECTION IV - SEVERABILITY OF EXCLUSIONS

With respect to determining the applicability of the above exclusions, no **wrongful act** or knowledge possessed by any one of the **insureds** shall be imputed to any other **insureds** to determine if coverage is available, unless indicated otherwise.

## SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLE

**A.** The Limits of Insurance shown in the Employment Practices Liability Coverage Part Declarations and the rules below fix the most we will pay regardless of the number of:

**1.** **Insureds** under this Coverage Part;

**2.** **Claims** made or suits brought on account of **wrongful acts** or otherwise; or

**3.** Persons or organizations making **claims** or bringing suits.

**B.** Our liability shall apply only to that part of each covered **loss** which is excess of the Deductible amount specified in the Employment Practices Liability Coverage Part Declarations and such Deductible amount shall be borne by the **insureds**.

**C.** **Defense costs** incurred by us or by the **insured** with our written consent are part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations. **Defense costs** we pay shall reduce such Limits of Insurance. **Defense costs** paid by the **insureds** shall be applied against the Deductible.

**D.** Our maximum aggregate liability for all **loss** resulting from all **claims** under this Coverage Part shall be the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations, subject to the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations.

ML 112 01 18 Page 7 of 8

**Bates page 46**

E.  If an Additional Defense Limit of Insurance is set forth in the Employment Practices Liability Coverage Part Declarations, **defense costs** will apply first to and reduce the Additional Defense Limit of Insurance. The Additional Defense Limit of Insurance will be in addition to, and not part of the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations. The Additional Defense Limit of Liability is applicable to **defense costs** only. **Defense costs** paid by the **insureds** shall be applied against the Deductible.

Upon exhaustion of the Additional Defense Limit of Insurance, **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations. **Defense costs** we pay shall reduce the Limit of Insurance.

## SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT

A.  We will have the right and duty to select counsel and defend the **insureds** against any **claim**; however, we will have no duty to defend the **insureds** against any **claim** to which this insurance does not apply.

B.  We may make any investigation we deem necessary and may, with the consent of the **insureds** named in connection with the **claim**, make any settlement of any **claim** we deem expedient. If the **insureds** withhold consent to such settlement, our liability for all **loss** in connection with such **claim** shall not exceed:

  1.  The amount of the proposed settlement plus **defense costs** incurred up to the date of the **insured's** refusal to consent to the proposed settlement; plus

  2.  90% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 90% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement, subject in all events to the applicable Limit of Insurance and Deductible for such **claim**. The remaining 10% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 10% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement shall be borne by the **insureds**, uninsured and at their own risk.

C.  Our right and duty to defend end when we have used up the applicable Limit of Insurance in the defense or payment of damages, judgments or settlements of covered **claims**.

## SECTION VII - SUPPLEMENTARY PAYMENTS

We will pay with respect to any **claim** we defend:

A.  The cost of any appeal bond, attachment bond, or any similar bond, but only for bond amounts within the applicable Limit of Insurance; provided, however, that we do not have to apply for or furnish these bonds; and

B.  All reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the **claim**, including actual loss of earnings up to $250 a day because of time off from work.

These payments will not reduce the Limits of Insurance.

Bates page 47

## The Cincinnati Insurance Company

# PILLAR POLICY RENEWAL APPLICATION
# FOR COMMUNITY ASSOCIATIONS

THIS POLICY PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.

| General Information |
| --- |
| This section must be completed. |

1. Expiring Policy Number: _____
2. Name of Applicant: Metropolis Condo Association
3. Physical Street Address: 8 W Monroe St.
   City: Chicago          State: IL          Zip: 60603
4. Mailing Address ([X] same as physical): _____
   City: _____          State: _____          Zip: _____
5. Website: www.MetropolisCondoAssoc.com          Phone Number: (312) 701-0714
6. Year Established: 2006
7. Nature of Business: Condo Association
8. What is the number of locations occupied by the Applicant and subsidiaries? 1
9. Does the Applicant have any subsidiaries of which their ownership or management control is greater than 50%? *If yes, please complete table below:*          ☐ Yes [X] No

| Name of Subsidiary | Description of Operations | Year Established | Non-Profit (NP) or For-Profit (FP) | Percent Owned |
| --- | --- | --- | --- | --- |
|  |  |  |  | % |
|  |  |  |  | % |
|  |  |  |  | % |
|  |  |  |  | % |

10. If annual revenues are less than $500,000, fully complete the table below or attach most recent annual financials:

|  | Most Recent Fiscal Year Ending ____/____/20____ | Previous Fiscal Year Ending ____/____/20____ |
| --- | --- | --- |
| Total Assets | $ | $ |
| Total Liabilities | $ | $ |
| Net Assets or Equity | $ | $ |
| Total Annual Revenues | $ | $ |
| Net Income or (Net Loss) | $ | $ |

ML 013 01 18          Page 1 of 5

Bates page 48

11. Please provide the following information regarding the employee count (*do not include Independent Contractors*) of the Applicant and subsidiaries:

| | Currently | One Year Ago |
|---|---|---|
| Full-Time Employees | 2 | 2 |
| Part-Time Employees | 1 | 1 |
| Temporary/Seasonal | 0 | 0 |
| Volunteers | 0 | 0 |

## Coverages Requested
### This section must be completed.

| Coverage Part | Per Expiring | Desired Limits if different from expiring |
|---|---|---|
| Directors and Officers Liability | ☒ | $ |
| Employment Practices Liability | ☒ | $ |
| Fiduciary Liability | ☐ | $ |
| Cyber | ☐ | Complete Cyber Section on Page 3. |
| Crime | ☐ | Complete Crime Section on Page 4. |

3. Desired Pay Plan:

| Installment Options | Agency Bill | Direct Bill |
|---|---|---|
| Annual | ☐ | ☒ |
| Semi-Annual | ☐ | ☐ |
| Quarterly | ☐ | ☐ |
| Monthly | N/A | ☐ |

## Directors & Officers Liability Coverage
### This section should only be completed if coverage is desired.

1. Total Number of: Home/Units: ~~XXXXX~~ 169    Undeveloped Lots: _____

2. Average Home Value: ☐ Up to $250,000  ☒ $250,001 - $500,000  ☐ $500,001 - $1,000,000  ☐ Over $1,000,000

3. What percentage of members are more than 60 days delinquent in dues? ____1____ %

4. Since the inception of the expiring policy, has the Applicant or any subsidiary:
   *If yes, please provide details.*
   a. Had a significant change in operations? ☐ Yes ☒ No
   b. Breached any debt covenant, loan agreement or contractual obligations? ☐ Yes ☒ No

5. Is Employed Lawyers Professional Liability Coverage desired? ☐ Yes ☒ No
   *If yes, please complete supplemental questionnaire ML 023 or ML 023 A.*

## Employment Practices Liability Coverage
### This section should only be completed if coverage is desired.

1. List the Applicant's total number of employees in the following locations:
   CA: _____  WV: _____  Foreign Countries: _____

2. Please indicate the number of employee terminations in the table below:

| | Last 12 Months | Previous 12 Months |
|---|---|---|
| Voluntary | 0 | 0 |
| Involuntary (excluding layoffs) | 0 | 0 |
| Layoffs | 0 | 0 |

3. Do you anticipate any layoffs in the future? *If yes, please provide complete details.* ☐ Yes ☒ No

4. Since the inception of the expiring policy, has the Applicant or any subsidiary revised any existing or implemented any new employment policies or procedures? *If yes, please provide details.* ☐ Yes ☒ No

ML 013 01 18

Page 2 of 5

**Bates page 49**

5. Is Third Party Liability Coverage desired? *If yes, complete 5.a.-5.d.* ☒ Yes ☐ No

    a. Are there written policies and procedures regarding the conduct of employees when interacting with third parties (customers, vendors, visitors, independent contractors and other third parties)? ☐ Yes ☒ No

    b. What percentage of employees deal with the general public?     *0* %

    c. Does the Applicant have Independent Contractors that are used on a regular basis? ☒ Yes ☐ No

    *If yes, how many?*    20-25

    d. Is the Applicant's website compliant with the Web Content Accessibility Guidelines (WCAG)? ☐ Yes ☐ No

    *If no, please advise time frame in which the website will be compliant.*

---

### Fiduciary Liability Coverage
This section should only be completed if coverage is desired.

1. Complete the table below for any employee benefit plan(s) sponsored by the Applicant and its subsidiaries:

| Plan Name | Year Established | Total Plan Assets | Plan Type* (DC, DB or ESOP) | Number of Participants |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

*Plan Type: DC-Defined Contribution, DB-Defined Benefit, ESOP-Employee Stock Ownership Plan

2. Since the inception of the expiring policy, has the Applicant or any subsidiary: *If yes, please provide details.*

    a. Had any plan(s) frozen, transferred or terminated? ☐ Yes ☐ No

    b. Made other material changes to the plan(s) listed in the table above? ☐ Yes ☐ No

3. What is the funding percentage for the Applicant's defined benefit retirement plan(s)? ☐ N/A _____ %

---

### Cyber Coverage
This section should only be completed if coverage is desired.

Indicate below if either of the following Cyber options is desired. *Please note that both options cannot be selected.*

☐ Option 1 - **Cincinnati Data Defender™** and/or **Cincinnati Network Defender™** - Please check desired coverages, if any. *If higher limits are* desired, *please complete supplemental questionnaire ML 002.*

| Cincinnati Data Defender™ | ☐ | | Cincinnati Network Defender™ | ☐ |
|---|---|---|---|---|
| Response Expenses Limit | $50,000 | | Computer Attack Limit | $100,000 |
| Defense and Liability Limit | $50,000 | | Network Security Liability Limit | $100,000 |
| Identity Recovery Limit | $25,000 | | | |

☐ Option 2 - **Cincinnati Cyber Defense™** - Application **ML 004** must be completed if this coverage is desired.

## Crime Coverage
This section should only be completed if coverage is desired.

1.

| Requested Insuring Agreements ☐ Per Expiring | Limit of Insurance | Deductible Amount |
|---|---|---|
| Employee Theft    ☐ Include ERISA    ☐ ERISA Only | $ | $ |
| Forgery or Alteration    ☐ Include Credit/Debit Card Forgery | $ | $ |
| Inside the Premises | $ | $ |
| Outside the Premises | $ | $ |
| Computer Fraud | $ | $ |
| Funds Transfer Fraud | $ | $ |
| Money Orders and Counterfeit Money | $ | $ |
| Clients' Property | $ | $ |
| Claim Expense | $ | $ |
| Social Engineering Fraud Endorsement | $ | $ |

2. Name of employee benefit plan(s) to be included for coverage, if any: _____

_____

3. Please complete the table below with regard to classification of employees of the Applicant and subsidiaries:

| Employee Classifications | Total Number |
|---|---|
| Officers and employees who handle, have custody of or maintain records of money, securities or other property (including that of ERISA plans). | |
| All other employees not included above. | |

4. If Credit/Debit Card Forgery is desired, what is the number of cardholders? _____

5. Since the inception of the expiring policy, has the Applicant or any subsidiary revised any existing or implemented any new policies or procedures that would affect Crime Coverage? ☐ Yes ☐ No *If yes, please provide details.*

## Crime Expanded Coverage
This section should only be completed if coverage is desired.

1. Please check one of the following in the table below if either Crime Expanded Coverage (XC®) or Crime Expanded Coverage Plus (XC+®) is desired. The limits and coverages in Crime XC and Crime XC+ are excess of any other crime forms forming part of the same policy, if any.

| Insuring Agreements | ☐ Crime XC | ☐ Crime XC+ |
|---|---|---|
| Employee Theft | $10,000 | $25,000 |
| Forgery or Alteration | $2,500 | $25,000 |
| Inside the Premises | $10,000 | $25,000 |
| Outside the Premises | $2,500 | $5,000 |
| Money Orders and Counterfeit Money | $10,000 | $25,000 |

## Required Attachments

- Most Recent Annual Financials or IRS 990 Tax Form if **General Information**, question 10. is not completed
- Current List of Directors & Officers *(if requesting Directors & Officers Liability)*
- Employee Handbook only if updated since last submitted *(if requesting Employment Practices Liability)*
- Blank Employment Application only if updated since last submitted *(if requesting Employment Practices Liability)*
- Most Recent tax form 5500 for each employee benefit plan *(if requesting Fiduciary Liability)*

ML 013 01 18

Page 4 of 5

**Bates page 51**

---

### Signature Section
This section must be completed.

The Cincinnati Insurance Company is hereby authorized to make any investigation and inquiry in connection with this application as it deems necessary.

The undersigned authorizes the release of claim information from any prior insurer to The Cincinnati Insurance Company. Signing this application does not bind the Applicant or The Cincinnati Insurance Company to complete the insurance.

PLEASE REVIEW CAREFULLY. Except to such extent as may be otherwise in the policy, the policy for which this application is being made is limited for ONLY CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE.

X *Kelly Dougherty*

_____    February 8, 2021
**Applicant's Signature (President, Chairperson, or Equivalent Position)**    Date

X Kelly Dougherty
_____    President
**Printed Name**    Title


X *[signature]*

_____    _____
**Agent's Signature**    Date

Rosenthal Brothers /BKS Partners
_____    _____
**Agency Name**    Agency Code Number


_____
**Agent's Name and License Number (Florida only)**

Refer to the following page for the current version of ACORD 63 FRAUD STATEMENTS.

ML 013 01 18                                                                 Page 5 of 5