**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| **The Cincinnati Insurance Company**, <br> Plaintiff <br><br> v. <br><br> **Metropolis Condominium Association; Teamsters Local Union No. 727 Pension Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Health & Welfare Fund, by and through its Board of Trustees John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Legal & Educational Assistance Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Parking Industry Labor Management Committee, by and through its Board of Trustees John T. Coli, Jr., Nicholas Micaletti, James Buczek, and Michael Prussian,** <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **Case Number: 24-cv-04328-MJK-** <br> ) **JTG** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Cincinnati Insurance Company ("Cincinnati"), by and through its legal counsel Peters & Nye LLP, for its Amended Complaint for Declaratory Judgment and Other Relief against Metropolis Condominium Association (Metropolis); and the following plaintiffs who filed

the underlying lawsuit (collectively, the "underlying plaintiffs"), Teamsters Local Union No. 727 Pension Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Health & Welfare Fund, by and through its Board of Trustees John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Legal & Educational Assistance Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Parking Industry Labor Management Committee, by and through its Board of Trustees John T. Coli, Jr., Nicholas Micaletti, James Buczek, and Michael Prussian, states as follows:

## NATURE OF ACTION

1.      This action arises from a controversy between Cincinnati and its Insured, Metropolis regarding whether Pillar Policy Number EMO 047 93 41, which Cincinnati issued to Metropolis for the March 1, 2021 to March 1, 2024 **policy period[1]**, does not provide coverage and defense for the lawsuit filed against Metropolis by the underlying plaintiffs in the Circuit Court of Cook County, Illinois, captioned *Teamsters Local Union No. 727 Pension Fund by and through its Board of Trustees, et al.*, Court No. 2023L003806 (the "Underlying Lawsuit").

2.      Cincinnati brings this action for declaratory judgment and other relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure to obtain a declaration that it has no duty to defend or indemnify Metropolis with respect to the Underlying

---

[1] Bold-faced terms are defined Policy terms.

2

Lawsuit. A copy of the Complaint that was filed in the Underlying Lawsuit is attached hereto as **Exhibit A**.

**PARTIES**

3.     Plaintiff **Cincinnati** is incorporated in the State of Ohio and maintains its principal place of business in Fairfield, Ohio.

4.     Defendant, **Metropolis**, is an Illinois corporation with its principal place of business at 8 W. Monroe St., Chicago, Illinois.

5.     Defendant, **Teamsters Local Union No. 727 Pension Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy** is a plaintiff in the Underlying Lawsuit.

  a.     Teamsters Local Union No. 727 Pension Fund ("Pension Fund"), is a jointly administered, multiemployer employee pension plan within the meaning of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and sections 3(2) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(2) and (37)(A). The Pension Fund's principal business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

  b.     The Pension Fund is a trust that is administered by a joint labor-management Board of Trustees in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

  c.     Defendants, John T. Coli, Jr., Caleen Carter-Patton, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy are Trustees of the Pension Fund pursuant to the Pension Fund's

3

Agreement and Declaration of Trust ("Pension Fund Trust Agreement"), whose business address as Trustees of the Pension Fund is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

d. The Trustees Coli, Jr., Carter-Patton, Micaletti, McCarthy, Youmans, and Tominberg are citizens of the State of Illinois.

e. The Trustee Degard is a citizen of the State of Michigan.

f. The Trustee Sheehy is a citizen of State of Florida.

6. Defendant, **Teamsters Local Union No. 727 Health & Welfare Fund by and through its Board of Trustees John T. Coli, Jr., Caleen Carter-Patton, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy**, is a plaintiff in the Underlying Lawsuit.

a. Teamsters Local Union No. 727 Health & Welfare Fund ("Welfare Fund") is a jointly administered multiemployer welfare plan within the meaning of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and §§ 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(1) and (37)(A). The Welfare Fund's principal business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

b. The Welfare Fund is a trust that is administered by a joint labor-management Board of Trustees in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

c. Defendants John T. Coli, Jr., Caleen Carter-Patton, Michael DeGard, Nicholas Micaletti John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy are Trustees of the Welfare Fund pursuant to the Welfare Fund's

4

Agreement and Declaration of Trust ("Welfare Fund Trust Agreement"), whose business address as Trustees of the Welfare Fund is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

    d.    The Trustees Coli, Jr., Carter-Patton, Micaletti, McCarthy, Youmans, and Tominberg are citizens of the State of Illinois.

    e.    The Trustee Degard is a citizen of the State of Michigan.

    f.    The Trustee Sheehy is a citizen of State of Florida.

7.    Defendant, **Teamsters Local Union No. 727 Legal & Educational Assistance Fund, by and through its Board of Trustees John T. Coli, Jr., Caleen Carter-Patton, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy**, is a plaintiff in the Underlying Lawsuit.

    a.    Teamsters Local Union No. 727 Legal & Educational Assistance Fund ("L&E Fund") is a jointly administered, multiemployer welfare plan within the meaning of section 302(c)(5), (7) and (8) of the LMRA, 29 U.S.C. § 186(c)(5), (7) and (8), and sections 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(1) and (37)(A). The L&E Fund's principal business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

    b.    The L&E Fund is a trust that is administered by a joint labor-management Board of Trustees in accordance with section 404 of ERISA, 29 U.S.C. § 1104.

    c.    Defendants John T. Coli, Jr., Caleen Carter-Patton, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy are Trustees of the L&E Fund pursuant to the L&E Fund's Agreement and

5

Declaration of Trust (the "L&E Fund Trust Agreement"), whose business address as Trustees of the L&E Fund is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

    d. The Trustees Coli, Jr., Carter-Patton, Micaletti, McCarthy, Youmans, and Tominberg are citizens of the State of Illinois.

    e. The Trustee Degard is a citizen of the State of Michigan.

    f. The Trustee Sheehy is a citizen of State of Florida.

8.     Defendant, **Parking Industry Labor Management Committee, by and through its Board of Trustees John T. Coli, Jr., Nicholas Micaletti, James Buczek, and Michael Prussian**, is a plaintiff in the Underlying Lawsuit.

    a. The Parking Industry Labor Management Committee (the "PILMC"), is a jointly administered labor-management committee within the meaning of section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). The PILMC's principal business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

    b. The PILMC is a trust that is administered by a joint labor-management Board of Trustees.

    c. Defendants John T. Coli, Jr., Nicolas Micaletti, James Buczek, and Michael Prussian are Trustees of the PILMC pursuant to the PILMC's Agreement and Declaration of Trust ("PILMC Trust Agreement"), whose business address as Trustees of the PILMC is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

    d. The Trustees Coli, Jr., Micaletti, Buczek, and Prussian, are citizens of the State of Illinois.

6

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between the Plaintiff and Defendants. The amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     This Court has the authority to declare the rights and obligations of the parties under the terms and provisions of the Cincinnati Policy issued to Metropolis pursuant to 28 U.S.C. §2201(a), 28 U.S.C. §2202, and Rule 57 of the Federal Rules of Civil Procedure.

11.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents and citizens of the State of Illinois.

12.     Venue is also appropriate in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District and the Underlying Lawsuit upon which this declaratory judgment action is based is pending in the Circuit Court of Cook County, Illinois, which is located in this District.

13.     Cincinnati and the Insured, Metropolis, have agreed to waive the Policy's non-binding mediation requirement set forth in Section XII.A. of the General Provisions Applicable to all Liability Coverage Parts, and all conditions precedent to the filing of this suit have been met.

## THE CINCINNATI POLICY

14.     Cincinnati issued Pillar Policy Number EMO 047 93 41 to Metropolis for the March 1, 2021 to March 1, 2024 **policy period** (the "Policy"). A certified copy of the Policy, with the pages of the Policy bates-numbered, is attached hereto as **Exhibit B**.

15.     The Policy contains a Community Association Directors and Officers Liability Coverage Part ("D&O Coverage Part") and an Employment Practices Liability Coverage Part ("EPL Coverage Part").

**A.     The D&O Coverage Part.**

16.     The Insuring Agreements of the D&O Coverage Part of the Policy read as follows:

**SECTION I - INSURING AGREEMENTS**

**A.**     We will pay on behalf of the **insured persons** all **loss** which they shall be legally obligated to pay, except for such **loss** which the **organization** actually pays as indemnification, resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.

**B.**     We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay as indemnification to the **insured persons** resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.

**C.**     We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, against the **organization** for a **wrongful act**.

We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

(Ex. B., Policy, D&O Coverage Part, Section I., bates page 32).

17.     **Insured** is defined in the D&O Coverage Part, Section II.K. as "the **organization** and the **insured persons**." (Ex. B, Policy, Section II.K. of the D&O Coverage Part, bates page 33).

18.     **Organization** is defined in Section II.O. of the D&O Coverage Part in pertinent part as:

**1.**     The **named insured** …

(Ex. B, Policy, Section II.O. of the D&O Coverage Part, bates page 34).

8

19.    **Named insured** is defined in Section I.M. of the General Provisions Applicable to all Liability Coverage Parts ("General Provisions") in pertinent part as "the entity or entities shown in the applicable Declarations as a Named Insured … ." (Ex. B, Policy, Section I.M. of the General Provisions, bates page 8).

20.    Metropolis, the only defendant named in the Underlying Lawsuit, is identified in the D&O Declarations as the Named Insured, and is the **organization**.

21.    **Insured persons** is defined at Section II.L. of the D&O Coverage Part as follows:

L.    **Insured persons** means:

1.    **Directors and officers**[2];

2.    All natural persons who were, now are, or shall become an **employee** or committee member, whether or not they were, are or shall be compensated, of the **organization**;

3.    All natural persons who were, now are, or shall become members or volunteers of the **organization** while acting on behalf of the **organization** in a voluntary capacity at the direction of the **directors and officers**; and

4.    Any natural person who is a property manager or an employee of a property management company, but only for **claims** arising out of their **wrongful acts** while acting at the direction of the **named insured** or any **subsidiary** or arising out of the **wrongful acts** of the **insureds** for which the property management company's employees are vicariously liable; provided, however, that any coverage under this Coverage Part for any such property manager shall be excess of any indemnification or insurance otherwise available to such property manager from any other source.

---

[2] **Directors and officers** is defined in Section II.C. of the D&O Coverage Part (at bates page 33) as:

all natural persons who were, now are, or shall become an officer, a duly elected or appointed member of the board of directors, trustees, regents, managers, governors, a **LLC manager** or an equivalent position of the **organization.**

**LLC manager** is defined in Section II.M. of the D&O Coverage Part (at bates page 33) as "any natural person who was, now is or shall become a manager, member of the board of managers or member of the **organization** that is a limited liability company but only with respect to the conduct of the limited liability company's business. However, any member of a limited liability company who is a passive investor not involved in the operations of the limited liability company is not a **LLC manager.**

(Ex. B, Policy, Section II.L. of the D&O Coverage Part, bates page 33).

22.    **Wrongful act** is defined in Section II.W. of the D&O Coverage Part in pertinent part as:

> W.    **Wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty including any **personal injury** or **publishers liability** committed, attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and prior to the end of the **policy period** by:
>
> [ … ]
>
> **4.**    The **organization.**

(Ex. B, Policy, Section II.W. of the D&O Coverage Part, bates page 34-35).

23.    **Loss** is defined in Section II.N. of the D&O Coverage Part as amended by Endorsement as follows:

> N.    **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages, judgments, settlements, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary or multiplied damages.
>
> **Loss** shall also include:
>
> Any **excess benefit transaction tax** an **insured** is obligated to pay as a result of a **claim**. The maximum Limit of Insurance per each **organizational manager** for any **excess benefit transaction tax** shall be the Excess Benefit Transaction Tax Sublimit set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. This sublimit shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and does not increase our maximum aggregate liability under this Coverage Part. The **excess benefit transaction tax** shall not include the 25% excise tax assessed against any **disqualified person** or the 200% tax assessed for failure to correct an **excess benefit transaction**.

10

**Loss** shall not include:

1.  Taxes, criminal or civil fines or penalties imposed by law, except as noted above;

2.  Any restitution, disgorgement or similar sums; or

3.  Any matter deemed uninsurable under the law pursuant to which this Coverage Part shall be construed.

In no event will punitive, exemplary or multiplied damages be insurable under this contract of insurance with respect to a **claim** brought against an Illinois domiciled insured in an Illinois state court, except to the extent such damages are insurance under Illinois law. Illinois law dictates that an insurer may not reimburse an insured for punitive damages assessed as a result of the insured's own misconduct.

(Ex. B, Policy, Section II.N. of the D&O Coverage Part, bates page 34, as amended by Endorsement at paragraphs I. and J., bates page 20).

24.     **Defense costs** are defined in Section II.B. of the D&O Coverage Part as amended by Endorsement as follows:

B.      **Defense costs** means reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim**. **Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds).

**Defense costs** shall not include:

1.  Salaries, wages, fees, overhead or expenses of our employees or any **insureds**, directors, officers, trustees or employees;

2.  Any amount covered by the duty to defend obligation of any other insurer; or

3.  Any pre-tender fees, costs or expenses.

(Ex. B, Policy, Section II.B. of the D&O Coverage Part, bates page 33, as amended by Endorsement at paragraph H, bates page 20).

11

25.     **Claim** is defined in pertinent part in Section II.A.2. of the D&O Coverage Part as follows:

> **Claim** means:
>
> …
>
> **2.**     A civil proceeding commenced by the filing of a complaint or similar pleading;
>
> […]
>
> against any **insured**, including any appeal therefrom.

(Ex. B, Policy, Section II.A. of the D&O Coverage Part, bates page 32).

26.     The Contract Exclusion, which is set forth at Section III.C. of the D&O Coverage Part of the Policy, reads as follows:

> **C.**     <u>Contract</u>
>
> We are not liable to pay, indemnify or defend any **claim** for any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:
>
> **1.**     To the extent the liability would have attached to any such **insureds in** the absence thereof; or
>
> **2.**     With respect to **defense costs** only, any **claim** brought by or on behalf of any member of the **organization** which is based upon, arising from, or in consequence of any actual or alleged breach of the **organization's covenants**, conditions and restrictions or by-laws;
>
> provided, however, that this exclusion shall not apply to **defense costs** with respect to any **claim** against any **insured persons.**

(Ex. B, Policy, Section III.C. of the D&O Coverage Part, bates page 35).

27.     Pursuant to Section VI.A. of the D&O Coverage Part, Cincinnati has "no duty to defend the **insureds** against any **claim** to which this insurance does not apply." (Ex. B, Policy, Section VI.A. of the D&O Coverage Part, bates page 37).

B.      **The EPL Coverage Part.**

28.     Section I – Insuring Agreements of the EPL Coverage Part reads as follows:

      A.      We will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **employment claim** or **immigration claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for an **employment wrongful act**or **immigration wrongful act**.

      B.      If Optional Third Party Liability is purchased as set forth in the Employment Practices Liability Coverage Part Declarations, we will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **third party claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **third party wrongful act**.

      We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

(Ex. B, Policy, Section I of the EPL Coverage Part, bates page 41).

29.     Section II. Definition E. of the EPL Coverage Part defines **employment claim** as

follows:

      E.      **Employment claim** means:

        1.      A written demand for monetary damages or non-monetary relief;
        2.      A civil proceeding commenced by the filing of a complaint or similar pleading;
        3.      A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order, or similar document;
        4.      An arbitration, mediation, or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured** is required or agrees to participate in such proceeding with our written consent;
        5.      In the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause or written demand for monetary or non-monetary relief, commenced by the receipt by an insured of such Notice, Order or written demand; or

13

> 6.     A written request to toll or waive a statute of limitations relating to a potential **employment claim** described in Definitions **E.1.** through **E.5**. above;
>
> which is brought by or on behalf of any past, present, or prospective **employee(s)** of the **organization** against any of the **insureds**, including any appeal therefrom.

(Ex. B, Policy, Section II.E. of the EPL Coverage Part, bates page 41-42).

    30.    **Employment wrongful act** is defined in Section II. Definition F. of the EPL

Coverage Part as follows:

> F.    **Employment wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed for:
>
> 1.    Wrongful discharge, dismissal or termination of employment, including constructive discharge;
> 2.    Breach of any oral, written or implied employment contract or quasi-employment contract other than any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement;
> 3.    Employment related misrepresentation;
> 4.    Violation of any federal, state or local law that concerns employment discrimination:
>> a.  Including:
>>> 1.    Sexual harassment involving unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature; or
>>> 2.    Workplace bullying or workplace harassment of a non-sexual nature;
>> b.    That:
>>> 1.    Are made a condition of employment;
>>> 2.    Are used as a basis for employment decisions; or
>>> 3.    Create a work environment that is intimidating, offensive, hostile or interferes with performance;
> 5.    Wrongful failure to employ or promote;
> 6.    Wrongful demotion;
> 7.    Wrongful discipline;
> 8.    Wrongful deprivation of a career opportunity;
> 9.    Negligent hiring, supervision, promotion or retention;
> 10.    Negligent evaluation;
> 11.    Employment related **personal injury;**
> 12.    Wrongful failure to grant tenure;

**13.** Employment related wrongful infliction of emotional distress;
**14.** Violation of the Family Medical Leave Act;
**15.** Wrongful **retaliation;**
**16.** Wrongful denial of training, denial or deprivation of seniority or evaluation;
**17.** Failure to adopt, create, provide or enforce adequate workplace or employment practices and procedures; or
**18.** Wrongful handling of any background check which is issued or expected to be used or collected in whole or in part for the purpose of serving as a factor in any employment related activities, including but not limited to any violation of the Fair Credit Reporting Act;

including any actual or alleged assault, battery, or loss of consortium in connection with Subparagraphs **1.** through **18.** above.

(Ex. B, Policy, Section II.F. of the EPL Coverage Part, bates page 42).

31. Section II. Definition H. of the EPL Coverage Part defines **Immigration claim** as

follows:

H. **Immigration claim** means any criminal investigation of any **insured** by any governmental agency for any actual or alleged hiring of illegal aliens.

(Ex. B, Policy, Section II.H. of the EPL Coverage Part, bates page 43).

32. Section II. Definition I. of the EPL Coverage Part defines **immigration wrongful**

**act** as follows:

**Immigration wrongful act** means any actual or alleged violation of the Immigration Reform and Control Act of 1986 or any amendments to or rules, regulations or orders promulgated pursuant to it, or similar provisions of any federal, state, or local statutory or common law.

(Ex. B, Policy, Section II.I. of the EPL Coverage Part, bates page 43).

33. Section II. Definition R. of the EPL Coverage Part defines **third party** as any

natural person who is not an **employee of** the **organization.**

(Ex. B, Policy, Section II.R. of the EPL Coverage Part, bates page 44).

34. Section II. Definition S. of the EPL Coverage Part defines **third party claim** as:

**1.** A written demand for monetary damages or non-monetary relief;

15

**2.** A civil proceeding commenced by the filing of a complaint or similar pleading;

**3.** A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

**4.** An arbitration, mediation or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured is** required or agrees to participate in such proceeding with our written consent; or

**5.** A written request to toll or waive a statute of limitations relating to a potential **third party claim** described in Definitions **S.1.** through **S.4.** above;

which is brought by or on behalf of any **third party** against any of the **insureds,** including any appeal therefrom.

(Ex. B, Policy, Section II.S. of the EPL Coverage Part, bates page 44).

35. Section II. Definition T. of the EPL Coverage Part defines **third party wrongful act** as follows:

T. **Third party wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Employment Practices Liability Coverage Part Declarations and prior to the end of the **policy period** by an **insured** or any person for whose acts the **insured** is legally liable for:

1. Discrimination by any **insured** against a **third party** in violation of any applicable federal, state, or local statute, ordinance, or common law;

2. Sexual or other harassment by any **insured**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **third party** which violates the civil rights of the third party; or

3. **Wrongful eviction** when arising out of discrimination or harassment by any **insured** against a **third party** in violation of any applicable federal, state, or local statute, ordinance, or common law.

(Ex. B, Policy, Section II.T. of the EPL Coverage Part, bates page 44).

36. **Wrongful eviction** is defined in Section II. Definition V. of the EPL Coverage Part as:

… the act of dispossessing or attempting to dispossess a **third party** of real

16

property to which such **third party** claims a right to occupy, and such real property is owned, operated or controlled by the **organization.**

(Ex. B, Policy, Section II.V. of the EPL Coverage Part, bates page 45).

37.     Pursuant to Section VI.A. of the EPL Coverage Part, Cincinnati "will have no duty to defend the **insureds** against any **claim** to which this insurance does not apply." (Ex. B, Policy, Section VI.A. of the EPL Coverage Part, bates page 47).

### THE UNDERLYING LAWSUIT

38.     The Underlying Lawsuit is for Metropolis' liability for its breach and avoidance of its contractual obligations under the terms of Management Agreements between Metropolis and Addis Parking & Valet, LLC ("Addis") and between Metropolis and TBF Parking LLC ("TBF") to pay the employee benefit contributions that Addis and TBF were required to pay to the Pension Fund, Welfare Fund, L&E Fund, and PILMC (collectively, the "Funds") under the terms of collective bargaining agreements with the Teamsters Local Union No. 727 (the "Union").

39.     The Complaint filed in the Underlying Lawsuit, which is attached hereto at **Exhibit A**, alleges that from at least 2012 through 2018 Metropolis and Addis had entered into Management Agreements under which Addis operated, directed the operations of, and employed the persons who worked in a parking garage owned by Metropolis. (Complaint, ¶¶33-34).

40.     The Complaint alleges that, pursuant to these Management Agreements, Metropolis agreed to cover all of Addis' operating expenses, including "salaries and wages and associated payroll burden (including, without limitation, payroll taxes and fringe benefits … .)". (Complaint, ¶36)

41.     The Complaint alleges that Addis was a party to collective bargaining agreements with the Teamsters Local Union No. 727 (the "Union"), which provided for healthcare, retirement, legal, education and other benefits for Addis' employees who worked in the parking garage

17

through the Funds. The Complaint alleges that the collective bargaining agreements required that Addis pay the Funds for the benefits provided to Addis' employees who worked in Metropolis' parking garage. (Complaint, ¶35).

42. The Complaint alleges that pursuant to the terms of the Management Agreements, Metropolis was required to cover all of Addis' operating expenses, which included the employee benefit contribution payments Addis was obligated to pay to the Funds pursuant to the terms of the collective bargaining agreements. The Complaint alleges that pursuant to the terms of the Management Agreements entered into between Metropolis and Addis, from 2011 until in or around May 2018, Metropolis reimbursed Addis for the employee benefit contributions Addis paid to the Funds in accordance with the terms of the collective bargaining agreements. (Complaint, ¶¶35-36, 38-40).

43. The Complaint alleges that in or after May 2018, which was before the December 2020 expiration of the Management Agreement, in order to avoid its obligation under the Management Agreements to pay for Addis' employee benefit contributions to the Funds, Metropolis directed Addis' founder, Solomon Ragassa ("Ragassa"), to eliminate Addis' payment of employee benefit contributions to the Funds. (Complaint, ¶¶41-43).

44. The Complaint alleges that after the Union would not let Addis out of the collective bargaining agreement, in an attempt to avoid Metropolis' continuing obligations for the employee benefit contributions, Metropolis directed, as a condition of continuing to work with Ragassa, that Ragassa start a new non-union company to do the same work as Addis. (Complaint, ¶44).

45. The Complaint alleges that in accordance with the directives made by Metropolis to avoid its obligation to pay for the employee benefit contributions, Ragassa failed to submit an LLC renewal for Addis which resulted in the administrative dissolution of Addis effective October

18

12, 2018; Ragassa formed a new company called TBF Parking LLC ("TBF") with whom Metropolis signed a virtually identical Management Agreement even though the contract with Addis was still in effect and TBF would be doing the same work as Addis; and Ragassa and Addis stopped making monthly employee benefit contributions to the Funds beginning with the May 2018 contribution in contravention of the collective bargaining agreement and ERISA. (Complaint, ¶¶45-48).

46.    The Complaint alleges that Metropolis' primary motivation for switching from Addis to TBF was to avoid incurring future liability for payment of the Union employee benefits under the terms of the Addis Management Agreement. (Complaint, ¶51).

47.    The Complaint alleges that during a citation examination Ragassa admitted that TBF and Addis were the same company, the only difference being the name change and tax ID; during a citation examination Metropolis admitted that it viewed Addis and TBF as the same company; and that TBF is the same business as Addis. (Complaint, ¶¶52-54).

48.    The Complaint alleges that in connection with a suit initiated by the Funds against Addis and TBF for breach of their obligations under the collective bargaining agreements, the U.S. District Court for the Northern District of Illinois entered a September 27, 2017 judgment finding Addis and TBF were jointly and severally liable under the collective bargaining agreements for all unpaid employee benefit contributions, and the resulting interest, liquidated damages, audit fees, attorneys' fees and court costs owed pursuant to ERISA due to the nonpayment of the employee benefit contributions, in the total amount of $327,253.16. (Complaint, ¶¶56-58).

49.    The Complaint alleges that Metropolis is responsible under the terms of the Management Agreements for the payment of Addis' and TBF's employee benefit contributions that were owed by them under the collective bargaining agreements. (Complaint, ¶59).

50.     The Complaint alleges that immediately after entry of the judgment holding TBF liable for the unpaid employee benefit contributions, Metropolis prematurely terminated the Management Agreement with TBF in order to avoid its contractual obligation under the Management Agreement to pay for Addis' and TBF's liability for the employee benefit contributions. (Complaint, ¶¶61-63).

51.     The Complaint alleges that on March 16, 2023, the Illinois court in a citation to discover assets proceeding, entered an order turning over to the Funds Addis' and TBFs' contractual rights to reimbursement from Metropolis for the employee benefit contributions Addis and TBF owed and authorized the Funds to bring suit against Metropolis to enforce Addis and TBFs' rights to reimbursement. (Complaint, ¶69).

52.     The Complaint alleges that the Funds demanded that Metropolis comply with its obligations under the Management Agreements to cover these fringe benefit expenses of Addis and TBF, but Metropolis has refused to comply with its contractual obligations. (Complaint, ¶70).

53.     The Complaint alleges that Metropolis refused to pay for the Addis and TBF employee benefit contributions Metropolis was required to pay under the Management Agreements in breach of the Management Agreements. (Complaint, ¶¶33-51, 59-63, 70, 74, 77).

54.     The Complaint alleges that Metropolis sought to avoid the payment of its obligations under the terms of the Management Agreements by maliciously, intentionally, and unjustifiably inducing Addis and TBF to breach the collective bargaining agreements so that there would be no employee benefit contributions that Metropolis would be obligated to reimburse under the Management Agreements.  (Complaint, ¶¶33-51, 59-63, 70, 74, 77, 83-84).

55.     The Complaint alleges that as a result of Metropolis' breach of its obligations under the Management Agreements to pay the employee benefit contributions and Metropolis'

inducement of Addis and TBF to breach their collective bargaining agreements so that Metropolis could avoid the payment of the employee benefit contributions pursuant to the terms of the Management Agreements, Addis and TBF incurred damages for the employee benefit contributions they were obligated to but did not pay pursuant to the collective bargaining agreements, which, through September 30, 2020 consists of the $327,253.16 judgment, and that Addis and TBF are also liable to the Funds pursuant to the collective bargaining agreements for the unpaid employee benefit contributions for October 1, 2020 through December 31, 2021. (Complaint, ¶¶56-58, 75-76, 86).

56. The Complaint demands the recovery from Metropolis of Addis' and TBF's liability for the unpaid employee benefit contributions which Addis and TBF were obligated to the pay to the Funds pursuant to the collective bargaining agreements, which the Complaint alleges Metropolis is obligated to pay under the terms of the Management Agreements and which contractual obligations Metropolis sought to avoid  by inducing Addis and TBF to breach the collective bargaining agreements. (Complaint, ¶¶33-51, 56-63, 70, 75-76, 86).

## COUNT I
### Declaratory Judgment
### D&O Coverage Part

57. Cincinnati repeats, realleges, and incorporates herein the allegations of paragraphs 1 through  56 of this Amended Complaint as though these paragraphs are alleged and set forth in this paragraph 57 of this Count I.

58. Pursuant to Insuring Agreement C. of the D&O Coverage Part, the Policy, potentially provides coverage and defense, subject to its terms, conditions, and exclusions, for **loss** resulting from a **claim** made against the **organization** for a **wrongful act**. (Ex. B., bates page 32).

59.    **Loss** is defined in Section II.N. of the D&O Coverage Part, as amended by Endorsement, as **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage under the Policy applies. (Ex. B, Policy, bates page 34, Endorsement at paragraphs I. and J., bates page 20).

60.    The definition of **loss** does not include prejudgment and postjudgment interest. In addition, pursuant to Section II.N., **loss** does not include

      1.    Taxes, criminal or civil fines or penalties imposed by law, except as noted above;

      2.    Any restitution, disgorgement or similar sums; or

      3.    Any matter deemed uninsurable under the law pursuant to which this Coverage Part shall be construed.

(Ex. B, Policy, bates page 34).

61.    The recoveries sought by the Funds do not constitute **loss** under the Policy terms because, among other reasons: they constitute disgorgement by Metropolis of the employee benefit contributions it was obligated to pay pursuant to the terms of the Management Agreements and it was not legally entitled to keep; they consist of civil fines and penalties awarded pursuant to ERISA; prejudgment interest is not **loss**; they consist of Metropolis liability for the employee benefit contributions that Metropolis owed and did not pay pursuant to the Management Agreements which liability for contractual obligations is not insurable as a matter of law; and, the restitution and disgorgement of such ill-gotten gain is uninsurable as a matter of law.

62.    Because the Insuring Agreement of the D&O Coverage Part is implicated only for a **claim** for **loss**, and because the Underlying Lawsuit does not seek the recovery of covered and insurable **loss**, Cincinnati has no duty to defend the Underlying Lawsuit.

63.     Pleading in the alternative, Cincinnati is not obligated to defend and indemnify the Underlying Lawsuit pursuant to the Contract Exclusion.

64.     Pursuant to the Contract Exclusion, Cincinnati is "not liable to pay, indemnify or defend any **claim** for any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement". (Ex. B, Policy, D&O Coverage Part, Section III.C., bates page 35).

65.     The Contract Exclusion reads as follows:

> **C.**    <u>Contract</u>
>
> > We are not liable to pay, indemnify or defend any **claim** for any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:
> >
> > **1.**    To the extent the liability would have attached to any such **insureds** in the absence thereof; or
> >
> > **2.**    With respect to **defense costs** only, any **claim** brought by or on behalf of any member of the **organization** which is based upon, arising from, or in consequence of any actual or alleged breach of the **organization's covenants**, conditions and restrictions or by-laws;
> >
> > provided, however, that this exclusion shall not apply to **defense costs** with respect to any **claim** against any **insured persons.**

(Ex. B, Policy, D&O Coverage Part, Section III.C., bates page 35).

66.     The Underlying Lawsuit against Metropolis is a **claim**, as that term is defined in Section II.A. of the D&O Coverage Part of the Policy.

67.     The Underlying Lawsuit is a **claim** against Metropolis.

68.     The exception to the Contract Exclusion for "**defense costs** with respect to any **claim** against any **insured persons**" is not applicable because the Underlying Lawsuit is not a **claim** against an **insured person**.

23

69.     The exception in subparagraph 2. of the Contract Exclusion is not applicable because the Underlying Lawsuit is not a **claim** brought by or on behalf of any member of the **organization** (i.e., Metropolis).

70.     The Underlying Lawsuit was brought by the Funds and their trustees against Metropolis to recover payments owed by Metropolis pursuant to the terms of its Management Agreements with Addis and TBF for the employee benefit contributions Addis and TBF were obligated to pay for their employees under their collective bargaining agreements.

71.     The Complaint alleges that Metropolis did not comply with and avoided compliance with the terms and conditions of the Management Agreements with Addis and TBF by not paying Addis' and TBF's employee benefit contributions and by inducing Addis and TBF to stop making employee benefit contribution payments to the Funds in breach of Addis' and TBF's obligations under their collective bargaining agreements so that Metropolis would not have to pay the employee benefit contributions required under the Management Agreements.

72.     The Underlying Lawsuit is a **claim** made against Metropolis for its  breach and avoidance of its contractual obligations under the terms and conditions of Management Agreements with Addis and TBF to pay the employee benefit contributions that Addis and TBF were required to pay to the Funds under the terms of their collective bargaining agreements with the Union.

73.     The Underlying Lawsuit is a **claim** made against Metropolis for Metropolis' liability under the terms and conditions of the Management Agreements with Addis and TBF for Addis' and TBF's liability under the terms of their collective bargaining agreements.

74.    Because Metropolis' liability to the Funds would not attach in the absence of the Management Agreements, the exception in subparagraph 1. of the Contract Exclusion is not applicable.

75.    The exception in subparagraph 1. of the Contract Exclusion is also not applicable because Metropolis' liability to the Funds would not attach in the absence of the collective bargaining agreements.

76.    Pursuant to the Contract Exclusion, Cincinnati is not liable to pay, indemnify or defend the Underlying Lawsuit.

77.    Accordingly, the Policy does not provide coverage for and does not apply to the Underlying Lawsuit.

78.    **Loss**  is defined in Section II.N. of the D&O Coverage Part as **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage applies, including damages, settlements, and judgments. (Ex. B., Policy, bates page 20).

79.    Because coverage does not apply to the Underlying Lawsuit, any damages, settlements, judgments, and attorneys' fees, costs, and expenses incurred in defense of the Underlying Lawsuit are not **loss** and Cincinnati has no obligation to pay or indemnify them.

80.    Because the insurance does not apply to the Underlying Lawsuit, Cincinnati has no duty to defend the Underlying Lawsuit pursuant to Section VI.A. of the D&O Coverage Part, which states that Cincinnati has "no duty to defend the **insureds** against any **claim** to which this insurance does not apply."

81.    Based on the foregoing, Cincinnati seeks a declaration that no coverage is afforded for the Underlying Lawsuit under the Policy; Cincinnati has no obligation to defend and indemnify

25

Metropolis against the Underlying Lawsuit; and Cincinnati has no obligation to pay any damages, judgments, settlements, attorneys' fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit.

82.     The **insured** Metropolis disputes Cincinnati's position that the Policy does not provide coverage and defense for the Underlying Lawsuit.

83.     An actual controversy of justiciable nature exists between Cincinnati and the Defendants, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this Court is invested with the power to declare the rights and obligations of the parties hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff, Cincinnati Insurance Company, respectfully requests that judgment be entered in its favor and against the Defendants, and prays that this Court:

A.     Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

B.     Enter an Order finding and declaring that the D&O Coverage Part of the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

C.     Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay **defense costs** or any attorneys' fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit;

D.     Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any **loss,** judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

E.     Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

## COUNT II
## Declaratory Judgment EPL Coverage Part

84.     Cincinnati repeats, realleges, and incorporates herein the allegations of paragraphs 1 through 83 of this Amended Complaint as though these paragraphs are alleged and set forth in this paragraph 84 of this Count II.

85.     The Underlying Lawsuit was brought by the Funds and their trustees against Metropolis to recover payments owed by Metropolis pursuant to the terms of its Management Agreements with Addis and TBF for the employee benefit contributions Addis and TBF were obligated to pay for their employees under their collective bargaining agreements.

86.     The Complaint alleges that the persons who worked in the Metropolis parking garage were employees of Addis and TBF; the Complaint does not allege that these persons were **employees** of Metropolis.

87.     Subject to all of the Policy's terms, conditions, definitions, limitations and exclusions, the Policy's EPL Coverage Part pays on behalf of **insureds** all **loss**[3] they shall be legally obligated to pay resulting from any **employment claim**, **immigration claim**, or **third party claim** first made during the policy period for an **employment wrongful act**, **immigration wrongful act** or **third party wrongful act** and shall have a duty to defend such **claims**. (Ex. B, Policy, EPL Coverage Part, Section I, bates page 41).

88.     The Underlying Lawsuit is not an **employment claim** for an **employment wrongful act** because it was not brought by or on behalf of **employees** of Metropolis for the specific matters identified in the definition of **employment wrongful act**.

---

[3] Used herein as defined in Section II. Definition M. of the EPL Coverage Part, as amended by Endorsements (bates page 43, Endorsement ¶¶ I. and J., bates page 20).

89. The Underlying Lawsuit is not an **immigration claim** for an **immigration wrongful act** because it has nothing to do with the hiring of illegal aliens.

90. The Underlying Lawsuit is not a **third party claim** for a **third party wrongful act** because it is not for discrimination, sexual or other harassment, or **wrongful eviction** set forth in the definition of **third party wrongful act** and the definition of **wrongful eviction.**

91. Accordingly, the Underlying Lawsuit does not fall within the scope of coverage provided by the EPL Coverage Part.

92. Because the Underlying Lawsuit does not fall within the scope of coverage provided by the EPL Coverage Part, Cincinnati has no obligation to defend and indemnify Metropolis against the Underlying Lawsuit; and Cincinnati has no obligation to pay any damages, judgments, settlements, attorney fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit.

93. Because the Policy does not apply to the Underlying Lawsuit, Cincinnati has no duty to defend the Underlying Lawsuit pursuant to Section VI.A. of the EPL Coverage Part, which states that Cincinnati has "no duty to defend the **insureds** against any **claim** to which this insurance does not apply."

94. Based on the foregoing, Cincinnati seeks a declaration that no coverage is afforded for the Underlying Lawsuit under the Policy; Cincinnati has no obligation to defend and indemnify Metropolis against the Underlying Lawsuit; and Cincinnati has no obligation to pay any damages, judgments, settlements, attorney fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit.

95. The **insured** Metropolis disputes Cincinnati's position that the Policy does not provide coverage and defense for the Underlying Lawsuit.

96. An actual controversy of justiciable nature exists between Cincinnati and the Defendants, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this Court is invested with the power to declare the rights and obligations of the parties hereto and to grant such relief as it deems necessary and proper.

WHEREFORE, Plaintiff, Cincinnati Insurance Company, respectfully requests that judgment be entered in its favor and against the Defendants, and prays that this Court:

A. Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

B. Enter an Order finding and declaring that the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

C. Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay **defense costs** or any attorneys' fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit;

D. Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any **loss,** judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

E. Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

\* \* \*

WHEREFORE, pursuant to the foregoing, Plaintiff, Cincinnati Insurance Company, respectfully requests that judgment be entered in its favor and against the Defendant on all Counts of its Amended Complaint, and prays that this Court:

A.      Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

B.      Enter an Order finding and declaring that the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

C.      Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay **defense costs** or any attorneys' fees, costs, and expenses incurred by Metropolis with respect to the Underlying Lawsuit;

D.      Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any **loss,** judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

E.      Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

Dated: July 17, 2024                          Respectfully submitted:

                                              **THE CINCINNATI INSURANCE COMPANY**

                                              By: /s/ Nancy K. Tordai
                                              One of its Attorneys

Nancy K. Tordai (ARDC # 6182953)
PETERS & NYE LLP
14 Executive Court, Suite 2
South Barrington, IL 60010
Telephone:  847-423-3053
Facsimile:  847-381-1693
Email:  nancytordai@petersnye.com

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2024, I electronically filed the foregoing Amended Complaint with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, through which service will be accomplished by the CM/ECF system upon the following counsel of record who are registered CM/ECF users:

*Counsel for Defendant, Metropolis Condominium Association:*

> Amelia Susan Newton
> Daniel V. Kinsella
> Paul C. Do
> Christopher Mican
> Clark Hill, PLC

*Counsel for Defendants, Teamsters Local Union No. 727 Pension Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Health & Welfare Fund, by and through its Board of Trustees John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Teamsters Local Union No. 727 Legal & Educational Assistance Fund, by and through its Board of Trustees, John T. Coli, Jr., Caleen Carter-Patton, Michael Degard, Nicholas Micaletti, John Mc Carthy, Gregory T. Youmans, Carl S. Tominberg and Robert Sheehy; Parking Industry Labor Management Committee, by and through its Board of Trustees John T. Coli, Jr., Nicholas Micaletti, James Buczek, and Michael Prussian*

> Paul W. Ryan
> William Martin Tasch
> CTM Legal Group

> /s/ Nancy K. Tordai
> *Counsel for The Cincinnati Insurance Company*