**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 24 C 4328** |
| **METROPOLIS CONDOMINIUM ASSOCIATION, et al.,** | ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Cincinnati Insurance Company sued Metropolis Condominium Association seeking a declaratory judgment that it is not obligated to defend or indemnify Metropolis in an underlying lawsuit alleging breach of contract and tortious interference with contract.[1]  Metropolis counterclaimed, seeking a declaratory judgment that Cincinnati is obligated to defend and indemnify it in the underlying lawsuit.  Cincinnati and Metropolis have each moved for summary judgment.  For the reasons stated below, the Court denies Cincinnati's motion and grants Metropolis's motion.

**Background**

The following facts are alleged in the underlying complaint, unless otherwise noted.[2]  Metropolis is a not-for-profit corporation that operates as the homeowners'

---

[1] Cincinnati also named as defendants certain Teamsters benefit funds.

[2] Cincinnati and Metropolis assert various objections to the statement of facts asserted

association for a high-rise building in downtown Chicago. The building contains residential condominiums and a parking garage. Metropolis has contracted with different companies over the years to provide parking services in the garage. Historically, the individuals who worked in the parking garage were members of the Teamsters union.

From 2012 to 2018, Metropolis and Addis—a company formed by one of the parking garage managers, Solomon Ragassa, to operate Metropolis's garage—executed management agreements that governed how Addis would operate the parking garage. Under the management agreements, Metropolis was required to pay Addis for operating expenses, including the salaries, wages, payroll taxes, and fringe benefits for the union workers.

Metropolis and Addis thereafter signed another management agreement that stated it would be in effect from January 1, 2018 through December 31, 2020. This agreement also required Metropolis to pay Addis for operating expenses, including employee salaries, wages, payroll taxes, and fringe benefits. Five months into the agreement, Metropolis directed Ragassa to eliminate all payments to the union benefit funds for fringe benefits. Based on this direction, Ragassa asked the union to release Addis from the collective bargaining agreement (CBA). The union refused. Metropolis then directed Ragassa to start a new non-union company that would do the same work as Addis. Ragassa created TBF Parking LLC. Ragassa and Addis then stopped making monthly contributions to the union funds.

---

by the opposing party. The Court need not resolve these disputes for purposes of this motion because it relies on the language of the underlying complaint and the relevant insurance policy.

In 2019, the union funds sued Addis and TBF in this District, seeking an order that would require Addis and TBF to submit to an audit to determine the amount of fringe benefit contributions due to the union funds and for entry of a judgment for the contributions due plus liquidated damages, interest, and attorney fees as required by ERISA. In 2021, Chief Judge Kendall found Addis and TBF liable for all unpaid fringe benefit contributions, totaling $327,253.16. Metropolis terminated its contract with TBF one month after the judgment was entered. The union funds attempted to collect the unpaid contributions from TBF, but it was insolvent. In 2022, the union funds issued and served a citation to discover assets on Metropolis and provided copies of the management agreements. On April 17, 2023, the union funds filed a lawsuit against Metropolis in the Circuit Court of Cook County asserting claims for breach of contract and tortious interference with contract (Funds Lawsuit). The Funds Lawsuit was settled and was dismissed with prejudice on April 7, 2025.

Metropolis tendered its defense of the Funds Lawsuit, as well as indemnity, to Cincinnati under an insurance policy issued for the period from March 1, 2021 to March 1, 2024. Cincinnati denied coverage and filed the present action, seeking a declaratory judgment that it does not have a duty to defend or indemnify Metropolis against the Funds Lawsuit. In August 2024, Metropolis filed a counterclaim seeking a declaratory judgment that Cincinnati breached its duty to indemnify Metropolis under the policy. Cincinnati and Metropolis have agreed to waive the policy's non-binding mediation requirement.

Cincinnati and Metropolis have each moved for summary judgment.

3

**Discussion**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a movant must show that even after drawing all reasonable inferences from the record in favor of the nonmoving party, no reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The parties do not dispute that coverage, if available, is governed by the Directors and Officers (D&O) liability coverage part of the relevant insurance policy. They dispute whether the policy's contract exclusion term bars coverage. In the alternative, Cincinnati argues that the Funds Lawsuit is not a "loss" covered by the policy in the first place.

Under Illinois law, which the parties agree governs, to determine whether an insurer has a duty to defend, a court examines "the underlying complaint and the language of the insurance policy." *Nat'l Cas. Co. v. McFatrid*ge, 604 F.3d 335, 338 (7th Cir. 2010); *see also U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991). The insurer's duty to defend arises if the allegations in an "underlying complaint fall within, or potentially within, the policy's coverage[.]" *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (quoting *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010)). "[T]he interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 819 (7th Cir. 2008).

4

## A.     Contract exclusion

Cincinnati contends that it has no duty to defend and indemnify the Funds Lawsuit because the lawsuit is expressly excluded from coverage under the policy's contract exclusion term.  Metropolis argues that Cincinnati has a duty to defend because the Funds Lawsuit includes a claim that Metropolis is liable for tortious interference with contract, a theory of liability that it contends is not barred by the contract exclusion term.

The contract exclusion term provides:

> We are not liable to pay, indemnify or defend any **claim** for any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:
>
> **1.** To the extent the liability would have attached to any such **insureds** in the absence thereof; or
>
> **2.** With respect to **defense costs** only, any **claim** brought by or on behalf of any member of the **organization** which is based upon, arising from, or in consequence of any actual or alleged breach of the **organization's** covenants, conditions and restrictions or by-laws;
>
> provided, however, that this exclusion shall not apply to **defense costs** with respect to any **claim** against any **insured persons.**

Am. Comp., Ex. 2, Policy, D&O Coverage Part, Section III.C.

Cincinnati begins by focusing on the reference to "claim" to argue that "the duty to defend is determined by reading the Complaint as a whole, not on a count by count basis and not on the basis of legal labels."  Pl.'s Mem. of L. at 7.  "Claim" is defined in the policy as a "civil proceeding commenced by the filing of a complaint or similar pleading."  Am. Comp., Ex. 2, Policy, D&O Coverage Part, Section II.A.

Under Illinois law, however, "[i]f even one theory in the complaint falls within the coverage provided by an insurance policy, the insurer has a duty to defend its insured."

5

*Ill. Mun. League Risk Mgmt. Ass'n v. City of Genoa*, 2016 IL App (4th) 150550, ¶ 13, 51 N.E.3d 1133, 1136.  Thus if the tortious interference with contract theory of liability in the Funds Lawsuit falls within the coverage provided by the policy, Cincinnati has a duty to defend Metropolis.  *Country Mut. Ins. Co. v. Oehler's Home Care, Inc.*, 2019 IL App (4th) 190080, ¶ 57, 160 N.E.3d 977, 986 ("[I]f the underlying complaint alleges multiple theories of recovery against the insured, the duty to defend arises even if only one such theory is potentially within the coverage of the policy.").

Cincinnati then argues that the contract exclusion term excludes any claim "because of" or "due to" any actual or alleged liability of Metropolis under the terms of any contract.  Pl.'s Mem. of L. at 8.  Cincinnati contends that the Funds Lawsuit falls within the contract exclusion because it "was brought against Metropolis because of and due to Metropolis' liability under the terms of the Management Agreements."  Pl.'s Mem. of L. at 8–9.  In response, Metropolis contends that the policy language requires an analysis of the alleged liability, not the claim.  It argues that the tortious interference with contract theory of liability in the Funds Lawsuit did not arise under the terms of any contract.

The burden of proving that a claim falls within an exclusion lies with the insurer, and the application of the exclusion must be "clear and free from doubt."  *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 721 (7th Cir. 2015).  Resolution of this question involves construction of the insurance policy, which is a question of law.  *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481, 491 (2001).  A court reads the policy as a whole and gives the policy's clear and unambiguous terms their plain and ordinary meaning.  *Id.* at 293, 757 N.E.2d at 491.  "Conversely, if the language of

6

the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer who drafted the policy and in favor of the insured." *Id.* A court should not, however, strain to find an ambiguity where none exists. *Id.*

The policy's contract exclusion term is not ambiguous. The term provides that Cincinnati has no duty to defend "any claim for . . . alleged liability of any insureds under the terms . . . of any . . . contract[.]" Am. Comp., Ex. 2, Policy, D&O Coverage, Section III.C. In other words, if Metropolis's alleged liability in the underlying suit falls under the terms of any contract, Cincinnati does not have a duty to defend.

Count two of the Funds Lawsuit—tortious interference with contract—alleged that Metropolis was liable because it induced Addis/TBF to breach the CBAs. Am. Comp., Ex. 1 (Funds Lawsuit) ¶ 84. Under Illinois law, a claim for tortious interference with contract requires: "(1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages." *L. Offs. of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 38, 232 N.E.3d 1111, 1122.

In support of this claim in the Funds Lawsuit, the plaintiffs there alleged that a valid CBA existed between the union and Addis/TBF; Metropolis was aware of that contract; Metropolis intentionally and unjustifiably induced Addis/TBF to breach the CBA; Addis/TBF did breach the contract; and the union funds sustained damages as a result. As Metropolis points out, it was not a party to the CBAs and had no obligations

7

or rights under them.  The Funds Lawsuit instead alleged that Metropolis induced Addis/TBF to breach the CBAs by:  (1) "[d]irecting Ragassa to cease contributions payments to the Funds in May 2018;" (2) "[t]elling Ragassa in May 2018 that it would not be making reimbursement for contribution payments;" (3) "[d]irecting Ragassa to close Addis and open a new company for the sole purpose of avoiding Addis's obligations under the CBA;" (4) "[s]igning a contract with TBF Parking in January 2019, to supersede and prematurely terminate the existing contract with Addis which, by its terms, would not expire for another year[;]" and (5) "[a]fter learning of the judgment against Addis and TBF, realizing that the above-referenced acts had not been successful in avoiding the obligations of the CBA, terminating TBF's contract mid-term, effective January 1, 2022."  Am. Comp., Ex. 1, Funds Lawsuit, ¶ 84.  The tortious interference with contract allegations did not rely on Metropolis's liability under the terms of the management agreement in any way.[3]  Rather, the allegations involved Metropolis's alleged inducement of another entity's breach of the CBA, to which Metropolis was not a party.  In the terms of the exclusion, the tortious interference claim against Metropolis did not involve a claim "for . . . alleged liability of [Metropolis] under the terms . . . of any . . . contract."  The Funds Lawsuit therefore alleged a theory of liability against Metropolis that is not barred by the contract exclusion term.

Cincinnati primarily relies on *Cousins Submarines, Inc. v. Federal Insurance Co.*,

---

[3] Cincinnati contends that "Metropolis admitted that the Funds Lawsuit was brought against Metropolis because of and due to its alleged liability under the terms of the Management Agreements and Addis/TBF's liability under the terms of the CBA."  Pl's. Resp. and Reply at 19.  The statement that Cincinnati cites is a summary of the claims from its complaint that Metropolis admitted in its answer.  The Court relies on the language of the policy and Funds Lawsuit rather than a broad summary of the lawsuit from one party.

No. 12 C 387, 2013 WL 494163 (E.D. Wis. Feb. 8, 2013), and *RSUI Indemnity Co. v. McDonough District Hospital*, No. 16 C 4177, 2017 WL 4319117 (C.D. Ill. Sept. 28, 2017), to support its argument that it has no duty to defend or indemnify. Neither of these cases is binding authority, and they do not support Cincinnati's argument. In *Cousins Submarines,* the insurance policy at issue did not cover loss "based upon, arising from, or in consequence of any actual or alleged liability . . . under any . . . contract . . . [except] to the extent that an Insured Organization would have been liable in the absence of the contract[.]" *Cousins Submarines*, 2013 WL 494163 at *4. The court found that the language excluded "coverage for liability *under* a contract, meaning liability pursuant to the existence of a contract (in other words, liability that relies on the existence of a contract)." *Id.* at *5. When analyzing how this exclusion applied to each claim in the underlying lawsuit, the court focused on whether the liability for the claim in question fell under a contract between the insured and its investors. *Id.* at *7–12. The court found that the term did not apply to a portion of a claim for rescission of contract because the rescissory liability would "not arise from the contract, but instead from Cousins' wrongful act of fraudulent inducement." *Id.* at *9. Thus even though the fraudulent inducement allegations may have been related to a contract, they did not fall under a contract.

The same analysis can be applied here. As discussed, the tortious interference with contract allegations asserted that Metropolis was liable based on wrongful actions that interfered with a contract between other parties, specifically, Addis/TBF and the union. On that claim, Metropolis—a nonparty to the contract—would not be liable based on that or any other contract, just as Cousins was not liable under a contract for

9

fraudulent inducement allegations that may have been related to a contract but were not based on the contract.

Furthermore, the contract exclusion term in the policy at issue in this case is narrower than the policy in *RSUI.* In *RSUI,* the policy at issue did not cover loss "in connection with any Claim . . . against . . . [an] Insured . . . *based upon or attributable to* . . . liability under . . . any contract . . . unless [the] Insured would have been liable in the absence of such contract[.]" *RSUI,* 2017 WL 4319117 at *3 (emphasis added). The court noted that it did not matter who the parties to the contract were; "[t]he claim just has to be based on or attributable to a contact." *Id.* The court found that a claim for intentional interference with contract was "directly attributable to liability under a contract" because it contained allegations that the defendant knew about a third party's contractual liability and interfered with that contract. *Id.* at *4.

In this case, the contract exclusion is limited to alleged liability "*under* the terms . . . of any . . . contract[.]" Am. Comp., Ex. 2, Policy, D&O Coverage, Section III.C (emphasis added). The exclusion does not include the broader language that was present in the policy at issue in *RSUI*: "based upon or attributable to" liability under any contract. Again, the Funds Lawsuit alleged that Metropolis induced Addis and TBF to breach their obligations to the union under the CBAs and that, as a result, the union funds incurred damages. None of the allegations that supported this theory were based on Metropolis's liability under the terms in the CBAs, management agreements, or any other contracts.

Cincinnati also argues that the breach of contract and tortious interference with contract claims are based on the same conduct. This is incorrect. The breach of

contract count is based on Metropolis's alleged breach of its obligations to Addis/TBF under the management agreements.  The tortious interference with contracts count is based on Metropolis's alleged actions to induce Addis/TBF to breach their obligations under the CBAs.  Although this distinction may appear subtle, it is critical.  The breach of contract count arises from Metropolis's actions under the terms of a contract, the management agreement.  The tortious interference with contract count arises from Metropolis's actions that are a step removed from the CBA between Addis/TBF and the union.  The tortious interference with contract theory of liability does not fall under the terms of any contract.

For these reasons, the tortious interference with contract theory of liability alleged in the Funds Lawsuit does not fall within the insurance policy's contract exclusion term.

## B.    Loss

Cincinnati argues briefly, in the alternative, that the Funds Lawsuit is not covered by the policy because it is not a "Loss."  Specifically, Cincinnati contends that the recoveries sought in the complaint constitute disgorgement of the employee benefit contributions Metropolis was obligated to pay pursuant to the terms of the management agreements, civil fines and penalties, and prejudgment interest.  Metropolis responds that the Funds Lawsuit is a covered Loss because it  sought damages related to its allegedly tortious conduct.

The policy defines "Loss," in relevant part, as follows:

> **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages, judgments, settlements, prejudgment and post judgment interest, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable

11

law most favorable to the insurability of punitive, exemplary or multiplied damages.

. . .

**Loss** shall not include:

**1.** Taxes, criminal or civil fines or penalties imposed by law, except as noted above;

**2.** Any restitution, disgorgement or similar sums; or

**3.** Any matter deemed uninsurable under the law pursuant to which this Coverage Part shall be construed

Am. Comp., Ex. 2, Policy, D&O Coverage, Section II.N.

As discussed, count two of the Funds Lawsuit alleged that Metropolis tortiously interfered with a contract between the union and Addis/TBF.  Count two did not seek disgorgement of funds.  Instead, it expressly sought damages for Metropolis's alleged tortious interference with the contract between the union and Addis/TBF.  Thus the defense costs associated with defending the Funds Lawsuit and the damages sought based on tortious interference with contract fall within the policy's definition of Loss.

In conclusion, Cincinnati had a duty to defend Metropolis in the Funds Lawsuit.

## Conclusion

For the reasons stated above, the Court denies Cincinnati's motion for summary judgment [dkt. 57] and grants Metropolis's cross-motion for summary judgment [dkt. 62]. The parties are directed to confer regarding appropriate language for a judgment consistent with the Court's ruling and are to file a joint status report including that language by no later than April 3, 2026.  The status report should also address whether there are any other matters remaining for determination by the Court and, if so, should propose a schedule.  The Court sets the case for a telephonic status hearing on April 7,

12

2026 at 9:10 a.m. call-in number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 31, 2026